# TODD RYKER *v.* TOWN OF BETHANY ET AL.
## (AC 26352)

Schaller, Lavine and Peters, Js.

Argued May 30—officially released August 29, 2006

*Max F. Brunswick*, with whom, on the brief, was *Alan E. Silver*, for the appellant (plaintiff).

*Colette S. Griffin*, with whom, on the brief, was *Jason E. Indomenico*, for the appellees (defendants).

*Opinion*

PETERS, J. Under our Workers' Compensation Act, General Statutes § 31-275 et seq., an employee who is injured on the job can receive compensation only if his injury arose out of and in the course of his or her employment. See General Statutes § 31-275 (1); *McNamara* v. *Hamden*, 176 Conn. 547, 550, 398 A.2d 1161 (1979). The principal issue in this appeal is whether the workers' compensation review board (board) properly affirmed a commissioner's finding that injuries received by a claimant as a result of a fight between himself and a coworker did not arise out of his employment. A secondary issue is whether the board properly upheld the commissioner's credibility determinations even though the commissioner made those determinations by reading transcripts from a prior hearing over which he had not presided. On both issues, we affirm the decision of the workers' compensation review board.

The plaintiff, Todd Ryker, filed a claim for workers' compensation benefits for the injuries that allegedly resulted from a physical confrontation between himself and a coworker while both workers were storing machinery for their employer, the defendant town of Bethany (town).[1] The town contested the workers' compensation claim by filing the required notice with the workers' compensation commission (commission) on March 27, 2002.

---

[1] In all relevant proceedings, the defendants included both the town of Bethany and its insurer, Connecticut Interlocal Risk Management Agency. Because the defendants have filed a joint brief in this court, we will refer to them in the singular as the town.

The plaintiff testified at hearings held by Commissioner Robin L. Wilson on August 12, 2002, and February 26, 2003. On July 23, 2003, the commission continued the hearing, this time before Commissioner Charles F. Senich. By agreement and without objection, the parties agreed to submit the transcripts from the August 12, 2002 and February 26, 2003 hearings to Senich.

On January 22, 2004, Senich issued a finding dismissing the claim for compensation because the plaintiff's injuries were not caused by the plaintiff's employment. The commissioner found that the plaintiff intentionally had instigated and provoked the incident in which he was injured. He further found that the incident in question was neither a direct cause of the performance of the plaintiff's employment duties nor incidental to such employment duty.[2] The plaintiff appealed to the board, which affirmed the commissioner's decision.

The plaintiff has now appealed to this court. He challenges the commissioner's finding that his injury was not work related and the propriety of the commissioner's credibility determination, which was based on the commissioner's reading of two transcripts. We are not persuaded by either claim.

The commissioner found the following facts, which the board upheld. On March 1, 2002, as part of his employment by the town, the plaintiff was engaged in picking up brush on the side of the road. He was performing this job with three coworkers: Brian Howard, Peter Schilpp and Ray Bunton. While on the job, the plaintiff was stopped by a friend with whom he engaged in a twenty to thirty minute conversation. After this conversation, the plaintiff went back to clearing brush, except for his lunch break, until the end of his workday at 3 p.m.

---

[2] The plaintiff filed a motion to correct on February 4, 2005, which was overruled by Senich on February 5, 2005.

When the plaintiff returned to the town garage at the end of his workday, his supervisor, the director of public works, verbally reprimanded him for having held his conversation that morning on the side of the road. Following this reprimand, the plaintiff learned from Howard that Schilpp had complained to the supervisor about the plaintiff's conversation with his friend.

The plaintiff then approached and confronted Schilpp, thereby intentionally impeding Schilpp's attempt to leave the garage. The plaintiff "got in Schilpp's face" and called him a rat. When the plaintiff came close to him, Schilpp pushed him away. The plaintiff then fell backward and slammed his elbow into the frame of a payloader. The commissioner found that this confrontation was "intentionally instigated and provoked" by the plaintiff and that the incident was "neither a direct cause of the performance of the [plaintiff's] job duties nor incidental to some such job duty."[3]

In addition to his findings regarding the March 1, 2002 fight between the plaintiff and Schilpp, the commissioner also found that the plaintiff had received a written reprimand from his supervisor dated March 6, 2002, about this incident. The supervisor reprimanded the plaintiff for unduly burdening his coworkers when they "had to cease performing their own tasks in order to complete work that should have been performed by you." This reprimand concluded that the conversation amounted to theft of time but that formal discipline would have been inappropriate. The supervisor also addressed the confrontation between the plaintiff and

---

[3] In making this finding, the commissioner also found that the plaintiff had been on notice regarding his conduct since he had received a November 19, 1999 written statement from the town that said: "Outbursts, shouting, and yelling such as you demonstrated this morning will not be tolerated between employees or between employees and management. This behavior will cease immediately."

Schilpp by stating: "When I, toward the end of the work-day, simply discussed with you the inappropriateness of [your roadside conversation] you immediately proceeded to engage in provocative behavior, including using profane and abusive language directed at coworkers, physically impeding a coworker, invading such coworker's personal space and engaging in name calling."

In light of his subordinate findings, the commissioner found that the altercation with Schilpp was due to the plaintiff's own aggressive action. He further found that there was no causal relation between the plaintiff's employment and his encounter with his coworker.

I

We first address the issue of whether the board properly affirmed the commissioner's decision to deny benefits to the plaintiff because the altercation causing his injury did not arise out of his employment. The plaintiff asserts that the commissioner's decision was improper because the confrontation between the two employees stemmed from the plaintiff's belief that his coworker had complained about him to their supervisor with respect to an event that was itself work related.

The standard of review of a commissioner's decision on whether an injury arose out of a claimant's employment is well settled. "The determination of whether an injury . . . arose in the course of employment is a question of fact for the commissioner. . . . [I]n determining whether a particular injury arose out of and in the course of employment, the [commissioner] must necessarily draw an inference from what he has found to be the basic facts. The propriety of that inference, of course, is vital to the validity of the order subsequently entered. But the scope of judicial review of that inference is sharply limited . . . . If supported

by evidence and not inconsistent with the law, the [commissioner's] inference that an injury did or did not arise out of and in the course of employment is conclusive. No reviewing court can then set aside that inference because the opposite one is thought to be more reasonable; nor can the opposite inference be substituted by the court because of a belief that the one chosen by the [commissioner] is factually questionable." (Citation omitted; internal quotation marks omitted.) *Daubert* v. *Naugatuck*, 267 Conn. 583, 590, 840 A.2d 1152 (2004).

"It is an axiom of work[ers'] compensation law that awards are determined by a two-part test. The employee has the burden of proving that the injury claimed *arose out of* the employment and *occurred in the course of* the employment." (Emphasis added.) *McNamara* v. *Hamden*, supra, 176 Conn. 550.

A

The standard for determining whether the injury *arose out of* the employment is well established. "The personal injury must be the result of the employment and flow from it as the inducing proximate cause. The rational mind must be able to trace resultant personal injury to a proximate cause set in motion by the employment and not by some other agency, or there can be no recovery." (Internal quotation marks omitted.) *Fair* v. *People's Savings Bank*, 207 Conn. 535, 545–46, 542 A.2d 1118 (1988).

As a general matter, our Supreme Court regularly has distinguished between injuries that arise out of employment and injuries that are proximately caused by an employee's action that is unrelated to employment. See, e.g., *Kolomiets* v. *Syncor International Corp.*, 252 Conn. 261, 274, 746 A.2d 743 (2000). If an employee temporarily deviates from the line of conduct established by his employment and subjects himself "to

an extraordinary peril quite outside of any risk connected with his employment," injuries suffered during such conduct can no longer be considered to arise out of employment. *Mason* v. *Alexandre*, 96 Conn. 343, 345, 113 A. 925 (1921).

With respect to determining whether employees involved in altercations with coworkers are engaged in conduct related to their employment, our Supreme Court has held that a fight between fellow employees "does *not necessarily* break the chain of causation between the conditions of employment and the injury where it results from the normal reactions of human nature due to conditions under which the men are thrown together in a common employment." (Emphasis added.) *Stulginski* v. *Waterbury Rolling Mills Co.*, 124 Conn. 355, 362, 199 A. 653 (1938); see also *Willis* v. *Taylor & Fenn Co.*, 137 Conn. 626, 628, 79 A.2d 821 (1951); *Jacquemin* v. *Turner & Seymour Mfg. Co.*, 92 Conn. 382, 386–87, 103 A. 115 (1918). Nonetheless, the court has held that an injury suffered in such a fight will be considered to have *arisen out of* the employment only "when the employee is assaulted while he is defending his employer, or his employer's property, or his employer's interests, *or when the assault was incidental to some duty of his employment . . . .*" (Emphasis added; internal quotation marks omitted.) *Jacquemin* v. *Turner & Seymour Mfg. Co.*, supra, 384. Otherwise, by participating in a fight, an employee "has voluntarily departed from the duties of his employment and embarked upon an enterprise of his own not contemplated by the terms of his employment. His injuries result from his own act and from a condition brought by himself and not incident to his employment." *Stulginski* v. *Waterbury Rolling Mills Co.*, supra, 362.

Here, the findings of the commissioner, as affirmed by the board, reasonably support the factual determination

that the plaintiff's injuries did not arise from his employment but rather from his own actions in confronting his coworker. The plaintiff views this confrontation as having arisen out of the prior work-related incident and his coworker's complaint to his supervisor about that morning's roadside conversation. The commissioner, however, expressly found to the contrary, namely, that the injuries did not arise out of this work-related matter but were instead "due to the [plaintiff's] aggressive actions toward Mr. Schilpp." A claimant may reasonably be found to have engaged in aggressive behavior even if the claimant did not himself strike the first blow in a fight. *Stulginski* v. *Waterbury Rolling Mills Co.*, supra, 124 Conn. 363 ("[e]ven where an injured employee is wholly passive, compensation will be refused unless the injury arose out of the conditions of the employment").

Finally, it bears remembering that a commissioner's inference that an injury did not arise out of employment is a finding of fact. As such, it may be reversed only if it is not supported by the evidence or is inconsistent with the law. *Daubert* v. *Naugatuck*, supra, 267 Conn. 590. If the commissioner, as in this case, reasonably finds an alternative action to be the proximate cause of the employee's injuries, we cannot say that his finding that the employment was not the proximate cause of the employee's injuries was unsupported by the evidence or inconsistent with the law.

B

We turn next to the second part of the compensability test, whether the plaintiff's injury occurred during the course of employment. The board indicated that the issue of the "course of employment" was not before it when it stated: "Here, there is no dispute that the [plaintiff] was injured in the course of his employment. At issue at the formal hearing [before the commissioner] was whether the [plaintiff's] injuries arose out of his

employment." The commissioner, however, addressed the issue of whether the injury occurred during the course of employment when he found that "the incident in question was neither a direct cause of the performance of the [plaintiff's] job duties nor incidental to some such job duty." Because the plaintiff challenged this finding before the board and the board affirmed the commissioner's decision in its entirety, we review this finding as challenged by the plaintiff.

"In order to come within the course of the employment, an injury must occur (a) within the period of the employment; (b) at a place the employee may reasonably be; and (c) while the employee is reasonably fulfilling the duties of the employment or doing something incidental to it." *McNamara* v. *Hamden*, supra, 176 Conn. 550–51. As in this case, where an employee is on the employer's premises within the period of employment,[4] "the basic test should be remembered and applied: Is this activity incidental to the employment?" Id., 553. In *McNamara*, our Supreme Court adopted the following rule in determining whether the activity was incidental to employment: "If the activity is regularly engaged in on the employer's premises within the period of the employment, with the employer's approval or acquiescence, an injury occurring under those conditions shall be found to be compensable." Id., 556.

On the record in this case, the commissioner was not required to find that the type of behavior that caused the plaintiff's injuries, fighting, was either approved of or acquiesced in by the town. To the contrary, the commissioner properly found that the town previously had manifested its disapproval of aggressive conduct in the workplace by reprimanding the plaintiff for

---

[4] The plaintiff was on the town's premises because he was "in the maintenance bay" of the town's garage during the incident. Likewise, the plaintiff was within the period of employment because he did not "clock out" until after the confrontation.

"[o]utbursts, shouting and yelling" in 1999. Therefore, the commissioner reasonably found that the "incident in question was neither a direct cause of the performance of the [plaintiff's] job duties nor incidental to some such job duty." In sum, the commissioner cannot be faulted for his determination that the plaintiff's injuries did not occur within the course of employment.

## II

The plaintiff also challenges the board's procedural ruling that Commissioner Senich properly made a credibility determination on the basis of transcripts from two of the three hearing sessions. As previously noted, Senich took over the hearings in this case from Commissioner Wilson with the consent of the parties. Despite his acquiescence at that time, the plaintiff argues that his due process rights were violated by Senich's factual findings because the only witness who testified before Senich was Schilpp, who was a witness for the town.[5]

In his brief to this court and at oral argument, the plaintiff argues that the commissioner improperly credited Schilpp's testimony at the compensation hearing without regard to the arguably inconsistent determinations made in related criminal proceedings. The plaintiff contends that his testimony about the altercation should have been credited by the commissioner because his criminal charges were nolled whereas Schilpp had admitted responsibility for the fight by pleading guilty to breach of the peace.[6] The plaintiff,

[5] Although the commissioner credited Schilpp's testimony regarding the incident, the commissioner did not find the plaintiff's testimony to be fully credible or persuasive. The plaintiff testified that he had asked Schilpp if he had a problem with him and that Schilpp had responded, "Yes, I do. . . . I'll knock your f'n head off."

[6] Although the plaintiff asserts that Schilpp admitted to entering a guilty plea, the following colloquy between the town's counsel and Schilpp before the commissioner demonstrates that the record is ambiguous as to what actually occurred in the criminal proceedings.

"Q. What was the charge?

"A. Breach of peace.

however, cites no legal authority that would require the commissioner to base his credibility finding on what transpired in the criminal proceedings, even if the criminal record had been clearer than it is. We therefore review the commissioner's credibility determination as we would other factual findings.

"[The] authority to find the facts entitles the commissioner to determine the weight of the evidence presented and the credibility of the testimony offered by lay and expert witnesses. . . . On review, the commissioner's conclusions must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them." (Citation omitted; internal quotation marks omitted.) *Funaioli* v. *New London*, 52 Conn. App. 194, 197, 726 A.2d 626 (1999).

We recognize the importance of a claimant's procedural rights in hearings before the workers' compensation commission. "Administrative hearings, including those held before workers' compensation commissioners, are informal and governed without necessarily adhering to the rules of evidence or procedure. . . . Nonetheless, administrative hearings must be conducted in a fundamentally fair manner so as not to violate the rules of due process. . . . A fundamental principle of due process is that each party has the right to receive notice of a hearing, and the opportunity to be heard at a meaningful time and in a meaningful manner. . . . Due process of law requires not only that

"Q. As a result of that, did you plead guilty or not guilty?
"A. Guilty.
"Q. Did you go to court?
"A. Yes.
"Q. Mr. Schilpp, what was your understand[ing] of what the mediator felt would be an appropriate . . . result of your conversation with the mediator?
"A. Just as long as that nobody was going to press charges any further, that he was going to ask the judge to drop the charges for both of us."

there be due notice of the hearing but that at the hearing the parties involved have a right to produce relevant evidence, and an opportunity to know the facts on which the agency is asked to act, to cross-examine witnesses and to offer rebuttal evidence. . . . Further, procedural due process mandates that the commissioner cannot consider additional evidence submitted by a party without granting the opponents . . . the opportunity to examine that evidence and to offer evidence in explanation or rebuttal." (Citations omitted; internal quotation marks omitted.) *Bryan* v. *Sheraton-Hartford Hotel*, 62 Conn. App. 733, 740, 774 A.2d 1009 (2001).

Without denigrating these due process rights, we also note that our statutes contemplate the possibility that one workers' compensation hearing officer may be designated to replace another such hearing officer so as to achieve a speedy resolution of a compensation claim. General Statutes § 31-278.[7] Our Supreme Court has held that, in the face of a record that is silent on the grounds for substitution, "we must assume them to have been sufficient." *Osterlund* v. *State*, 129 Conn. 591, 594, 30 A.2d 393 (1943). Furthermore, it is well recognized that "members of an administrative agency may vote after reading the record . . . ." (Citation omitted.) *Lewis* v. *Statewide Grievance Committee*, 235 Conn. 693, 707, 669 A.2d 1202 (1996).

The record before this court does not reveal why Commissioner Senich was designated to replace Commissioner Wilson as the hearing officer in this matter.[8]

---

[7] General Statutes § 31-278 provides in relevant part: "If a commissioner is disqualified or temporarily incapacitated from hearing any matter, or if the parties shall so request and the chairman of the Workers' Compensation Commission finds that it will facilitate a speedier disposition of the claim, he shall designate some other commissioner to hear and decide such matter. . . ."

[8] Commissioner Senich noted for the record that "there were formal hearing proceedings before Commissioner Robin Wilson. I'm going to pick up today myself."

Under *Osterlund*, this silent record requires that we assume that the grounds for this designation were sufficient. Significantly, the parties expressly agreed to admit the prior transcripts into the hearing record.[9]

In light of the statute, the case law and the parties' acquiescence in the proceedings before Commissioner Senich, we are not persuaded by the plaintiff's objection to the fact-finding in this case. The board properly ruled that Commissioner Senich had the authority to determine the credibility of the witnesses whose testimony he read as well as that of the witness whom he heard.

The decision of the workers' compensation review board is affirmed.

In this opinion the other judges concurred.

---

[9] The following colloquy took place between counsel for the plaintiff and the town when the commissioner agreed to admit the prior transcripts into the record:

"[The Commissioner]: The transcripts [are] from August 12, 2002, and February 26, 2003, and by agreement, we can mark those commission exhibit one. We'll mark August 12, 2002, commission exhibit number one and the second transcript, February 26, 2003, commission exhibit number two. Exhibit A and respondent's exhibits one and two, is that correct?

"[The Defendant's Counsel]: Yes, commissioner.

"[The Commissioner]: There's no objection, attorney Silver.

"[The Plaintiff's Counsel]: I have none, commissioner."