CHRISTINE L. SAPKO *v.* STATE OF
CONNECTICUT ET AL.
(AC 30962)

DiPentima, Robinson and Alvord, Js.*

---

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued January 21—officially released August 3, 2010

*John J. Quinn,* with whom was *John J. Quinn, Jr.,* law student intern, for the appellant (plaintiff).

*Lawrence G. Widem,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Philip M. Schulz,* assistant attorney general, for the appellant (named defendant).

*Opinion*

ROBINSON, J. The plaintiff, Christine L. Sapko, appeals from the decision of the workers' compensation review board (board), which affirmed the decision by the workers' compensation commissioner for the eighth district (commissioner) denying her claim for survivor's benefits, pursuant to General Statutes § 31-306,[1] in connection with the death of her husband, Anthony L. Sapko (decedent), who was employed by the defendant state of Connecticut department of correction[2] at the time of his death. On appeal, the plaintiff claims that the board improperly (1) affirmed the commissioner's finding that the ingestion of excessive quantities of Oxycodone and Seroquel constituted a superseding cause of

---

[1] General Statutes § 31-306 (a) provides in relevant part: "Compensation shall be paid to dependents on account of death resulting from an accident arising out of and in the course of employment or from an occupational disease as follows . . . (4) If there is a presumptive dependent spouse surviving and also one or more presumptive dependent children, all of which children are either children of the surviving spouse or are living with the surviving spouse, the entire compensation shall be paid to the surviving spouse in the same manner and for the same period as if the surviving spouse were the sole dependent. . . ."

[2] In addition to the state, GAB Robins North America, the administrator of the workers' compensation policy at issue, also was named as a defendant. Because the state is the only defendant on appeal, we refer to it in this opinion as the defendant.

the decedent's death, (2) affirmed the commissioner's finding that compensable work injuries of February 13, 2001, September 25 and December 10, 2005, and May 16, 2006, were not the proximate cause of the decedent's death, and (3) concluded that the commissioner's finding that the decedent's death was due to ingestion of excessive dosages of prescribed drugs was equivalent to a finding that the decedent committed wilful and serious misconduct under General Statutes § 31-284 (a).[3] We affirm the decision of the board.

The following facts, as found by the commissioner and accepted by the board, are relevant to the plaintiff's appeal. "The [plaintiff] is the dependent spouse of [the decedent]. She and the decedent were the parents of two minor children. On August 18, 2006, the decedent died. The decedent's cause of death was the result of multiple drug toxicity due to the interaction of excessive doses of Oxycodone and Seroquel . . . . In addition to identifying the cause of death as multiple drug toxicity, the medical examiner's report also indicated that the nature of the decedent's death was an accident and not suicide. . . .

"Until the time of his death, the decedent was employed as a correction officer for the state of Connecticut. The decedent's employment with the state began December 8, 1995, and followed his twenty-one year tenure as [a] police officer for the city of New Britain.

---

[3] General Statutes § 31-284 (a) provides in relevant part: "An employer who complies with the requirements of subsection (b) of this section shall not be liable for any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment or on account of death resulting from personal injury so sustained, but an employer shall secure compensation for his employees as provided under this chapter, except that compensation shall not be paid when the personal injury has been caused by the wilful and serious misconduct of the injured employee or by his intoxication. . . ."

"In the course of his employment as a correction officer, the decedent experienced four incidents which gave rise to claims for workers' compensation benefits. [The dates of the incidents were February 13, 2001, September 25 and December 10, 2005, and May 16, 2006.] Following the May 16, 2006 incident, the decedent remained out of work due to a compensable back injury. Between March 15, 2005 through August 1, 2006, the decedent was treated for back pain by . . . Mark Thimineur [a physician with] the Comprehensive Pain and Headache Treatment Center, LLC. During the period of this treatment the decedent was prescribed various medications. The prescribed drugs included: Oxycodone, Zanaflex, Kadian, Celebrex, Roxicodone, Avinza, Lidoderm patches and Duragesic. . . . The record before the [commissioner] reflected that the Comprehensive Pain and Headache Treatment Center, LLC, counseled the decedent on the proper use of the drugs prescribed for pain control and required the decedent to participate in a controlled substances agreement. . . .

"Beginning in December, 1999, the decedent started treatment for major depression with . . . Edgardo D. Lorenzo, a psychiatrist. The decedent treated with . . . Lorenzo until the time of his death. The week prior to his death, the decedent complained to . . . Lorenzo of depression and racing thoughts. It was for these symptoms that . . . Lorenzo prescribed Seroquel.

"The record also indicated that, at the time of his death, the decedent's level of Oxycodone was twenty times higher than the therapeutic dosage, and the level of Seroquel was in excess of five times the therapeutic dosage.[4] The [commissioner] found that both drugs can

---

[4] The commissioner's findings and the exhibits before him revealed the following. Two prescriptions bottles were found near the decedent's body. One bottle was for Oxycodone and had printed on it instructions that between one and three pills were to be taken each day. The decedent refilled his prescription on August 3, 2006. The prescription contained ninety pills, yet only nineteen pills were in the bottle when police found it on August 18, 2006. The Seroquel prescription had been filled on August 9, 2006. The

be taken safely if taken in proper dosages. . . . The [commissioner] then found [that the decedent's] ingestion of excessive quantities of Oxycodone and Seroquel, though accidental, constitute a superseding cause of his death. . . . The [commissioner] also found [that the] work injuries of February 13, 2001, September 25, 2005, December 10, 2005, and May 16, 2006, were neither a substantial factor nor the proximate cause of [the decedent's] death." (Citations omitted; internal quotation marks omitted.) The board affirmed the decision of the commissioner, and this appeal followed. Additional facts will be set forth as necessary.

We begin by setting forth the relevant standard of our review. "The commissioner is the sole trier of fact and [t]he conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . The review [board's] hearing of an appeal from the commissioner is not a de novo hearing of the facts. . . . [I]t is [obligated] to hear the appeal on the record and not retry the facts. . . . On appeal, the board must determine whether there is any evidence in the record to support the commissioner's finding and award. . . . Our scope of review of [the] actions of the [board] is [similarly] . . . limited. . . . [However,] [t]he decision of the [board] must be correct in law, and it must not include facts found without evidence or fail to include material facts which are admitted or undisputed." (Internal quotation marks omitted.) *Brown* v. *Dept. of Correction*, 89 Conn. App. 47, 53, 871 A.2d 1094, cert. denied, 274 Conn. 914, 879 A.2d 892 (2005).

---

instructions stated that one to two pills could be taken per night; only eleven of the sixty pills remained in the bottle on August 18, 2006. Had the decedent taken the maximum allowable dosage each day, at most forty-five Oxycodone and eighteen Seroquel pills should have been missing. Instead, seventy-one Oxycodone and forty-nine Seroquel pills were missing.

I

The plaintiff first claims that the board improperly affirmed the commissioner's finding that the decedent's ingestion of excessive quantities of Oxycodone and Seroquel constituted a superseding cause of his death. Specifically, the plaintiff contends that our Supreme Court's decision in *Barry* v. *Quality Steel Products, Inc.*, 263 Conn. 424, 820 A.2d 258 (2003), abrogated the superseding cause doctrine for workers' compensation cases. We agree.

The following additional facts are relevant to the plaintiff's claim. In his findings, the commissioner concluded that "[the decedent's] ingestion of excessive quantities of Oxycodone and Seroquel, though accidental, constitute a superseding cause of his death." The plaintiff filed a motion to correct, suggesting that the commissioner substitute that finding with a finding that "[the decedent's] ingestion of excessive quantities of Oxycodone and Seroquel was an accidental overdose." The defendant filed an objection to the motion to correct and a motion for articulation requesting that the commissioner articulate with more specificity that finding because he had failed to specify whether the overdose itself was accidental or whether the resulting death of the decedent was the accidental result of an intentional act. The commissioner denied the plaintiff's motion to correct, as well as the defendant's motion to articulate.

In her appeal to the board, the plaintiff raised the issue of the commissioner's application of the superseding cause doctrine. The board stated that "our reading of *Barry* reflects the court's analysis of proximate causation in a claim of negligence and where our tort law has been amended so as to apportion liability on the basis of comparable negligence. Given the strict liability concepts underpinning our Workers' Compensation Act

(act); General Statutes § 31-275 et seq.; we do not think that *Barry* applies as argued by [the plaintiff]." After applying the appropriate proximate cause analysis to the case, the board affirmed the commissioner's decision.

Our Supreme Court has stated that in *Barry,* it "questioned the continuing viability of the doctrine of superseding cause and concluded 'that the rationale supporting the abandonment of the doctrine of superseding cause outweighs any of the doctrine's remaining usefulness in our modern system of torts. . . . [W]e believe that the instruction on superseding cause complicates what is essentially a proximate cause analysis and risks jury confusion. The doctrine also no longer serves a useful purpose in our tort jurisprudence, especially considering our system of comparative negligence and apportionment, [under which] defendants are responsible solely for their proportionate share of the injury suffered by the plaintiff.' [*Barry* v. *Quality Steel Products, Inc.,* supra, 263 Conn. 446.]

"The court did not abolish the doctrine of superseding cause in all civil cases, however, explaining that its 'conclusion that the doctrine . . . no longer serves a useful purpose is limited to the situation in cases . . . [in which] a defendant claims that its tortious conduct is superseded by a subsequent negligent act or there are multiple acts of negligence. Our conclusion does not necessarily affect those cases [in which] the defendant claims that an unforeseeable intentional tort, force of nature, or criminal event supersedes its tortious conduct.' Id., 439 n.16." *Archambault* v. *Soneco/Northeastern, Inc.,* 287 Conn. 20, 43–44, 946 A.2d 839 (2008).

Although neither *Barry* nor its progeny directly addressed the question of whether the superseding cause doctrine had been abrogated in workers' compensation cases, our Supreme Court has since interpreted

the dicta in footnote 16 of the *Barry* opinion to enumerate the exceptions to *Barry*'s abrogation of the doctrine. "*Barry* clearly establishes that the doctrine of superseding cause is limited to situations in which an unforeseeable intentional tort, force of nature or criminal event supersedes the defendant's tortious conduct . . . ." Id., 44. Although it remains possible that a workers' compensation case could fit into one of the enumerated exceptions, we are not faced with an intentional tort, force of nature or criminal event in the present case. Thus, the board was in error to the extent that it agreed with the commissioner's application of the superseding cause doctrine. We now must turn to the question of whether the board's proximate cause analysis serves as a ground for us to affirm its decision.

II

The plaintiff next claims that the board improperly affirmed the commissioner's finding that the compensable work injuries of February 13, 2001, September 25 and December 10, 2005, and May 16, 2006, were not the proximate cause of the decedent's death. We disagree.

The following facts are necessary for the resolution of the plaintiff's claim. At the hearing before the commissioner, the parties presented the opinions of several medical professionals. Marc J. Bayer, chief of the toxicology division at the University of Connecticut School of Medicine, stated that the decedent's death was the result of the combined drug toxicity of Oxycodone and Seroquel. Unlike the conclusion of Frank Evangelista, an associate medical examiner from the office of the chief medical examiner, who concluded that the decedent's death was accidental, Bayer concluded that there was insufficient evidence to determine whether the decedent deliberately killed himself or if his death was the accidental result of a deliberate act. He further

noted that although the level of Oxycodone in the decedent's system was twenty times higher than the therapeutic dosage, it was unlikely that such a dosage could have caused the decedent's death in the absence of the Seroquel. The commissioner found Bayer to be credible and persuasive.

The commissioner also examined the deposition of Lorenzo, the decedent's psychiatrist. Lorenzo began treating the decedent on December 20, 1999, prior to any of the decedent's compensable injuries, at which time he diagnosed the decedent with major depression. The decedent did not claim his treatment with Lorenzo as part of his workers' compensation case, and Lorenzo's treatment notes do not reflect a relationship between the decedent's injuries and his need for treatment. Lorenzo prescribed Seroquel to treat the decedent's racing thoughts and depression and for mood stabilization on August 9, 2006, nine days prior to the decedent's death. In Lorenzo's view, the decedent's death was accidental. The commissioner did not find Lorenzo to be credible. He explicitly disregarded Lorenzo's conclusion that the decedent's workplace injuries made him more depressed.

Based on the evidence, the commissioner concluded that the compensable injuries were neither a substantial factor nor the proximate cause of the decedent's death. In considering the proximate cause analysis, the board stated: "First, we note that the law regarding proximate cause analysis in workers' compensation matters has been and continues to be [that the] personal injury must be the result of the employment and flow from it as the inducing proximate cause. The rational mind must be able to trace [the] resultant personal injury to a proximate cause set in motion by the employment and not by some other agency, or there can be no recovery. . . .

"Applying the appropriate proximate cause analysis to the instant matter, we do not believe the trial commissioner erred. Essentially, the trial commissioner conclude[d] that in the instant matter there was some other agency in the chain of proximate cause and that [the] other agency was the claimant's accidental ingestion of excessive quantities of prescribed medication." (Citations omitted; internal quotation marks omitted.) Noting that the commissioner's conclusion was to be left undisturbed unless it resulted from an incorrect application of law, was without support in the evidence or was based on unreasonable or impermissible factual inferences, the board affirmed the commissioner's conclusion that the compensable injury was not the proximate cause of the decedent's death.

Before reviewing the plaintiff's claims, we must first articulate the well settled legal principles in this area. For the decedent's death to be compensable, the plaintiff had to prove a causal connection between the decedent's compensable injuries and his subsequent death. "It is well settled that, because the purpose of the act is to compensate employees for injuries without fault by imposing a form of strict liability on employers, to recover for an injury under the act the plaintiff must prove that the injury is causally connected to the employment. To establish a causal connection, a plaintiff must demonstrate that the claimed injury (1) arose out of the employment, and (2) in the course of the employment." (Internal quotation marks omitted.) *Spatafore* v. *Yale University*, 239 Conn. 408, 417–18, 684 A.2d 1155 (1996). "Proof that the injury arose out of the employment relates to the origin and cause of the accident. . . . [T]he essential connecting link of direct causal connection between the personal injury and the employment must be established before the act becomes operative." (Internal quotation marks omitted.) *Krevis* v. *Bridgeport*, 63 Conn. App. 328, 333, 777

A.2d 196 (2001). "The standard for determining whether the injury arose out of the employment is well established. The personal injury must be the result of the employment and flow from it as the inducing proximate cause. The rational mind must be able to trace [the] resultant personal injury to a proximate cause set in motion by the employment and not by some other agency, or there can be no recovery." (Internal quotation marks omitted.) *Ryker* v. *Bethany*, 97 Conn. App. 304, 309, 904 A.2d 1227, cert. denied, 280 Conn. 932, 909 A.2d 958 (2006).

"When . . . it is unclear whether an employee's death is causally related to a compensable injury, it is necessary to rely on expert medical opinion. . . . Unless the medical testimony by itself establishes a causal relation, or unless it establishes a causal relation when it is considered along with other evidence, the commissioner cannot reasonably conclude that the death is causally related to the employee's employment." (Citation omitted; internal quotation marks omitted.) *DiNuzzo* v. *Dan Perkins Chevrolet Geo, Inc.*, 294 Conn. 132, 142, 982 A.2d 157 (2009). The commissioner made the determination that Lorenzo's testimony that the decedent had become more depressed as a result of his compensable injuries was not credible. The commissioner meanwhile accepted the determination of Evangelista, who concluded that the decedent's death was the result of an accidental overdose, and also Bayer's conclusion that the dosage of Oxycodone was likely nonfatal unless mixed with the dosage of Seroquel.

The board accepted the commissioner's conclusion that the decedent's accidental ingestion of excessive quantities of prescribed medication broke the chain of proximate causation. In the absence of any credible evidence tending to show that the decedent's depression and subsequent prescription for Seroquel were related to his compensable injuries, that he purposely

killed himself for some reason arising out of his compensable injuries or that the dosage of Oxycodone alone could have caused the decedent's death, the causal link between his compensable injuries and his death simply becomes too attenuated to support a reasonable inference that the injuries and death were connected. The board's conclusion correctly applied the law and did not rely on facts that were found without evidence or fail to include material facts that were admitted or undisputed. We cannot agree that the board improperly affirmed the commissioner's finding that the compensable work injuries were not the proximate cause of the decedent's death, and, thus, the death is not compensable.

## III

The plaintiff's final claim is that the board improperly concluded that the commissioner's finding that the decedent's death was due to his ingestion of excessive dosages of prescribed drugs was equivalent to a finding that he committed wilful and serious misconduct under § 31-284 (a). We disagree.[5]

On appeal to the board, the plaintiff argued that the commissioner's conclusion that relied on the superseding cause doctrine was akin to a conclusion that the decedent's death was due to his wilful and serious misconduct. The board disagreed with the plaintiff's argument and stated that it believed that the commissioner's findings were "nothing more than a finding and conclusion consistent with proximate cause concepts under our workers' compensation law" and that the "conclusion was not the result of an inappropriate application

---

[5] As part of this claim, the plaintiff also argues that the defendant failed to assert the affirmative defense of wilful and serious misconduct in violation of its burden to alert her as to the specific grounds on which her claim for compensation was being contested pursuant to General Statutes § 31-294c (b).

of the wilful and serious misconduct defense." The record does not support the argument that the commissioner made a finding of wilful and serious misconduct. He did not use that term in his findings, and the plaintiff has not referred us to anything in the record indicating that such a finding was made.

The decision of the workers' compensation review board is affirmed.

In this opinion the other judges concurred.