44 A.3d 827 (2012)
305 Conn. 360
Christine L. SAPKO,
v.
STATE of Connecticut et al.
No. 18680.
Supreme Court of Connecticut.
Argued October 26, 2011.
Decided June 12, 2012.
*829 John J. Quinn, Hartford, with whom, on the brief, was John J. Quinn, Jr., for the appellant (plaintiff).
Lawrence G. Widem, assistant attorney general, with whom, on the brief, were Richard Blumenthal, former attorney general, and Philip M. Schulz, assistant attorney *830 general, for the appellee (named defendant).
ROGERS, C.J., and NORCOTT, PALMER, ZARELLA, MCLACHLAN and HARPER, Js.
PALMER, J.
The plaintiff, Christine L. Sapko, appeals from the judgment of the Appellate Court, which affirmed the decision of the workers' compensation review board (board) upholding the decision of the workers' compensation commissioner for the eighth district (commissioner) denying her claim for survivor's benefits pursuant to General Statutes § 31-306[1] of the Workers' Compensation Act (act), General Statutes § 31-275 et seq. The plaintiff had sought survivor's benefits following the death of her husband, Anthony S. Sapko (decedent), an employee of the named defendant, the state of Connecticut.[2] The commissioner denied the plaintiff's claim following the commissioner's determination that the decedent's simultaneous ingestion of excessive quantities of Oxycodone, which had been prescribed for compensable work injuries, and Seroquel, which had been prescribed for an unrelated case of major depression, constituted a superseding cause of his death and, therefore, that the decedent's compensable work injuries were not the proximate cause of his death. After the board upheld the commissioner's decision, the plaintiff appealed to the Appellate Court, claiming that the board incorrectly had concluded that the commissioner's application of the superseding cause doctrine was proper in light of Barry v. Quality Steel Products, Inc., 263 Conn. 424, 446, 820 A.2d 258 (2003), which abrogated that doctrine in most tort contexts.[3] The Appellate Court *831 agreed with the plaintiff that the board incorrectly had concluded that the superseding cause doctrine applied to the present case but concluded that this impropriety was harmless because the record otherwise supported the board's determination that the commissioner properly had applied the law to the facts in deciding the issue of proximate cause. See Sapko v. State, 123 Conn.App. 18, 26, 30, 1 A.3d 250 (2010). We granted the plaintiff's petition for certification to appeal limited to the following issue: "Did the Appellate Court properly uphold the determination of the compensation review board that the compensable work injuries were not the proximate cause of the decedent's death?" Sapko v. State, 298 Conn. 923, 4 A.3d 1229 (2010).
We conclude, contrary to the predicate determination of the Appellate Court, that the board correctly concluded that the superseding cause doctrine applies to certain cases under the act and, further, that the commissioner's finding that superseding events broke the chain of proximate causation between the decedent's compensable work injuries and his death constituted a proper application of the law to the facts. We also reject the plaintiff's claim that the commissioner's finding is incompatible with our statement in Birnie v. Electric Boat Corp., 288 Conn. 392, 953 A.2d 28 (2008), that an injured employee is entitled to recovery under the act if he can demonstrate that his employment contributed to the injury "in more than a de minimus way." Id., at 413, 953 A.2d 28. Accordingly, we affirm the judgment of the Appellate Court, albeit on the basis of different reasoning.
The facts, as found by the commissioner and accepted by the board, are set forth in the opinion of the Appellate Court: "The [plaintiff] is the dependent spouse of [the decedent]. She and the decedent were the parents of two minor children. On August 18, 2006, the decedent died. The decedent's cause of death was the result of multiple drug toxicity due to the interaction of excessive doses of Oxycodone and Seroquel.... In addition to identifying the cause of death as multiple drug toxicity, the medical examiner's report also indicated that the nature of the decedent's death was an accident and not suicide....
"Until the time of his death, the decedent was employed as a correction officer for the state of Connecticut. The decedent's employment with the state began December 8, 1995, and followed his twenty-one year tenure as [a] police officer for the city of New Britain.
"In the course of his employment as a correction officer, the decedent experienced four incidents [that] gave rise to claims for workers' compensation benefits. [These incidents occurred on February 13, 2001, September 25, 2005, December 10, 2005, and May 16, 2006.] Following the May 16, 2006 incident, the decedent remained out of work due to a compensable back injury. Between March 15, 2005, [and] August 1, 2006, the decedent was treated for back pain by ... Mark Thimineur [a physician with] the Comprehensive Pain and Headache Treatment Center, LLC. During the period of this treatment the decedent was prescribed various medications. The prescribed drugs included: Oxycodone, Zanaflex, Kadian, Celebrex, Roxicodone, Avinza, Lidoderm patches and *832 Duragesic.... The record before the [commissioner] reflected that the Comprehensive Pain and Headache Treatment Center, LLC, counseled the decedent on the proper use of the drugs prescribed for pain control and required the decedent to participate in a controlled substances agreement....
"Beginning in December, 1999, the decedent started treatment for major depression with ... Edgardo D. Lorenzo, a psychiatrist. The decedent [went to] ... Lorenzo [as a patient] until the time of [the decedent's] death. The week prior to his death, the decedent complained to ... Lorenzo of depression and racing thoughts. It was for these symptoms that ... Lorenzo prescribed [the antipsychotic medication] Seroquel.
"The record also indicated that, at the time of his death, the decedent's level of Oxycodone was twenty times higher than the therapeutic dosage, and the level of Seroquel was in excess of five times the therapeutic dosage. The [commissioner] found that both drugs can be taken safely if taken in proper dosages."[4] (Internal quotation marks omitted.) Sapko v. State, supra, 123 Conn.App. at 21-23, 1 A.3d 250.
"At the hearing before the commissioner, the parties presented the opinions of several medical professionals. Marc J. Bayer, chief of the toxicology division at the University of Connecticut School of Medicine, stated that the decedent's death was the result of the combined drug toxicity of Oxycodone and Seroquel. Unlike the conclusion of Frank Evangelista, an associate medical examiner from the office of the chief medical examiner, who concluded that the decedent's death was accidental, Bayer concluded that there was insufficient evidence to determine whether the decedent deliberately killed himself or if his death was the accidental result of a deliberate act. He further noted that although the level of Oxycodone in the decedent's system was twenty times higher than the therapeutic dosage, it was unlikely that such a dosage could have caused the decedent's death in the absence of the Seroquel. [Bayer also testified that narcotic users do not usually take more Seroquel than prescribed because it is an antipsychotic drug that does not produce a comforting feeling or cause the user to become high.] The commissioner found Bayer to be credible and persuasive.
"The commissioner also examined the deposition [testimony] of Lorenzo, the decedent's psychiatrist. Lorenzo began treating the decedent on December 20, 1999, prior to any of the decedent's compensable injuries, at which time he diagnosed the decedent with major depression. The decedent did not claim his treatment with Lorenzo as part of his workers' compensation case, and Lorenzo's treatment notes do not reflect a relationship between the decedent's injuries and his need for [psychiatric] treatment. Lorenzo prescribed *833 Seroquel to treat the decedent's racing thoughts and depression and for mood stabilization on August 9, 2006, nine days prior to the decedent's death. In Lorenzo's view, the decedent's death was accidental. The commissioner did not find Lorenzo to be credible. He explicitly disregarded Lorenzo's conclusion that the decedent's workplace injuries made him more depressed. [The commissioner also found that the decedent received repeated instructions and counseling regarding the proper use of the prescribed controlled substances and entered into a controlled substances agreement as part of his treatment.]" Id., at 26-27, 1 A.3d 250.
On the basis of this evidence, the commissioner found that there was no causal relationship between the decedent's compensable injuries and his need for psychiatric treatment, including his treatment with Seroquel. He also concluded that the "[e]levated [level] of Oxycodone by itself did not cause [the decedent's] death." Rather, the commissioner found that the decedent's "ingestion of excessive quantities of Oxycodone and Seroquel, [al]though accidental, constitute[d] a superseding cause of his death."[5] He also concluded that "[the decedent's] work injuries of February 13, 2001, September 25, 2005, December 10, 2005, and May 16, 2006, were neither a substantial factor nor the proximate cause of [the decedent's] death."[6]
The plaintiff appealed to the board from the decision of the commissioner, claiming that, in light of our abrogation of the superseding cause doctrine in Barry, the commissioner improperly had relied on that doctrine in concluding that the decedent's compensable injuries were not the proximate cause of his death. The board disagreed, explaining that, because Barry was predicated on the change in our tort law away from contributory negligence to a system of comparative fault and apportionment, Barry applies to negligence claims only. The board stated that, "[g]iven the strict liability concepts underpinning [the] ... [a]ct ... we do not think that Barry applies as [the plaintiff] argue[s]...." The board further concluded that the record supported the commissioner's finding that an outside causal agency, namely, the decedent's ingestion of excessive quantities of prescribed medication, had intervened and broken the chain of causation between the decedent's compensable injuries and his death.
The plaintiff appealed to the Appellate Court from the decision of the board, claiming, contrary to the determination of the board, that Barry had abrogated the superseding cause doctrine in workers' compensation cases and, therefore, that the board improperly had upheld the commissioner's finding that the decedent's ingestion of excessive quantities of Oxycodone and Seroquel constituted a superseding cause of his death. The Appellate Court agreed that the commissioner's application of the superseding cause doctrine was improper. Sapko v. State, supra, 123 Conn.App. at 26, 1 A.3d 250. Specifically, the court determined that, "[a]lthough neither Barry nor its progeny *834 directly addressed the question of whether the superseding cause doctrine had been abrogated in workers' compensation cases, [the] Supreme Court has since interpreted... Barry ... to enumerate the exceptions to [the court's] abrogation of the doctrine ... [as being] `limited to situations in which an unforeseeable intentional tort, force of nature or criminal event supersedes the defendant's tortious conduct....' [Archambault v. Soneco/Northeastern, Inc., 287 Conn. 20, 44, 946 A.2d 839 (2008)]. Although it remains possible that a workers' compensation case could fit into one of the enumerated exceptions, [the court is] not faced with an intentional tort, force of nature or criminal event in the present case." Sapko v. State, supra, at 25-26, 1 A.3d 250.
The Appellate Court also concluded, however, that the board's improper reading of Barry was harmless because the record supported the board's determination that the commissioner properly had applied the law to the facts in deciding the issue of proximate cause. See id., at 29-30, 1 A.3d 250. Specifically, the court stated: "The board accepted the commissioner's conclusion that the decedent's accidental ingestion of excessive quantities of prescribed medication broke the chain of proximate causation. In the absence of any credible evidence tending to show that the decedent's depression and subsequent prescription for Seroquel were related to his compensable injuries, that he purposely killed himself for some reason arising out of his compensable injuries or that the dosage of Oxycodone alone could have caused the decedent's death, the causal link between his compensable injuries and his death simply becomes too attenuated to support a reasonable inference that the injuries and death were connected. The board's conclusion correctly applied the law and did not rely on facts that were found without evidence or fail to include material facts that were admitted or undisputed." Id.
On appeal to this court, the plaintiff raises two claims, both of which relate to the law of proximate causation. First, the plaintiff contends that, although the Appellate Court properly concluded that the superseding cause doctrine does not apply to cases arising under the act, the Appellate Court was incorrect in determining that the contrary conclusion of the board and the commissioner constituted harmless error.[7] Second, the plaintiff contends that the Appellate Court improperly failed to heed this court's statement in Birnie v. Electric Boat Corp., supra, 288 Conn. 392, 953 A.2d 28, that "the substantial factor causation standard simply requires that the employment, or the risks incidental thereto, contribute to the development of the injury in more than a de minimis way." Id., at 412-13, 953 A.2d 28. According to the plaintiff, this requirement is satisfied in the present case because it is undisputed that the decedent would not have died but for his ingestion of Oxycodone, which he would not have been taking but for his compensable injuries.[8]
*835 We conclude that the commissioner properly applied the superseding cause doctrine in finding that the decedent's compensable work injuries were not the proximate cause of his death. We further conclude that the plaintiff's reliance on Birnie is misplaced. Accordingly, we affirm the judgment of the Appellate Court.
Before addressing the plaintiff's claims, we set forth the principles that govern our review in workers' compensation appeals. "[T]he power and duty of determining the facts rests [with] the commissioner, the trier of facts.... The conclusions drawn by him from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them....
"It matters not that the basic facts from which the [commissioner] draws this inference are undisputed rather than controverted.... It is likewise immaterial that the facts permit the drawing of diverse inferences. The [commissioner] alone is charged with the duty of initially selecting the inference [that] seems most reasonable and his choice, if otherwise sustainable, may not be disturbed by a reviewing court." (Citations omitted; internal quotation marks omitted.) Six v. Thomas O'Connor & Co., 235 Conn. 790, 798-99, 669 A.2d 1214 (1996).
Furthermore, "[i]t is well settled that, because the purpose of the act is to compensate employees for injuries without fault by imposing a form of strict liability on employers, to recover for an injury under the act a plaintiff must prove that the injury is causally connected to the employment. To establish a causal connection, a plaintiff must demonstrate that the claimed injury (1) arose out of the employment, and (2) in the course of the employment.... Proof that [an] injury arose out of the employment relates to the time, place and circumstances of the injury.... Proof that [an] injury occurred in the course of the employment means that the injury must occur (a) within the period of the employment; (b) at a place the employee may reasonably be; and (c) while the employee is reasonably fulfilling the duties of the employment or doing something incidental to it." (Citation omitted; internal quotation marks omitted.) Daubert v. Naugatuck, 267 Conn. 583, 588-89, 840 A.2d 1152 (2004); see also Kolomiets v. Syncor International Corp., 252 Conn. 261, 272, 746 A.2d 743 (2000) ("[t]he essential connecting link of direct causal connection between the personal injury and the employment must be established before the act becomes operative" [internal quotation marks omitted]).
"[I]n Connecticut traditional concepts of proximate cause constitute the rule for determining ... causation [in workers' compensation cases].... [T]he test of proximate cause is whether the [employer's] conduct is a substantial factor in bringing about the [employee's] injuries.... Further, it is the plaintiff who bears the burden to prove an unbroken sequence of events that tied [the employee's] injuries to the [employer's conduct].... The existence of the proximate cause of an injury is determined by looking from the injury to the negligent act complained of for the necessary causal connection." (Citations omitted; internal quotation marks omitted.) DiNuzzo v. Dan Perkins Chevrolet Geo, Inc., 294 Conn. 132, 141-42, 982 A.2d 157 (2009).
As we previously have indicated, "[t]his court has defined proximate *836 cause as [a]n actual cause that is a substantial factor in the resulting harm...." (Internal quotation marks omitted.) Stewart v. Federated Dept. Stores, Inc., 234 Conn. 597, 606, 662 A.2d 753 (1995). "Because actual causation, in theory, is virtually limitless, the legal construct of proximate cause serves to establish how far down the causal continuum tortfeasors will be held liable for the consequences of their actions.... The fundamental inquiry of proximate cause is whether the harm that occurred was within the scope of foreseeable risk created by the defendant's negligent conduct." (Citation omitted.) First Federal Savings & Loan Assn. of Rochester v. Charter Appraisal Co., 247 Conn. 597, 604, 724 A.2d 497 (1999). "The question of proximate causation ... belongs to the trier of fact because causation is essentially a factual issue.... It becomes a conclusion of law only when the mind of a fair and reasonable [person] could reach only one conclusion; if there is room for a reasonable disagreement the question is one to be determined by the trier as a matter of fact." (Citations omitted; internal quotation marks omitted.) Stewart v. Federated Dept. Stores, Inc., supra, at 611, 662 A.2d 753.

I
We first address the plaintiff's contention that, although the Appellate Court properly determined, in light of Barry, that the board was incorrect in concluding that the commissioner properly had applied the superseding cause doctrine in resolving the plaintiff's claim for benefits under the act, the Appellate Court wrongly determined that the impropriety was harmless.[9] We reject the plaintiff's contention that the superseding cause doctrine does not apply to cases under the act and we further conclude that the commissioner properly applied that doctrine to the facts of the present case.
In Barry, a product liability case, we considered whether the superseding cause doctrine had outlived its usefulness in our modern system of torts, which is based on comparative fault and apportionment. As we explained in Barry, "[t]he function of the [superseding cause] doctrine is to define the circumstances under which responsibility may be shifted entirely from the shoulders of one person, who is determined to be negligent, to the shoulders of another person, who may also be determined to be negligent, or to some other force.... Thus, the doctrine ... serves as a device by which one admittedly negligent party can, by identifying another's superseding conduct, exonerate himself from liability by shifting the causation element entirely elsewhere.... If a third person's negligence is found to be the superseding cause of the ... injuries, that negligence, rather than the negligence of the party attempting to invoke the doctrine of superseding cause, is said to be the sole proximate cause of the injur[ies]....
"Even if a plaintiff's injuries are in fact caused by a defendant's negligence, a superseding cause may break that causal connection if it so entirely supersedes the *837 operation of the defendant's negligence that it alone, without his negligence contributing thereto in any degree, produces the injury; or it must be the nonconcurring culpable act of a human being who is legally responsible for such act.... If a defendant's negligence was a substantial factor in producing the plaintiff's injuries, the defendant would not be relieved from liability for those injuries even though another force concurred to produce them." (Citations omitted; internal quotation marks omitted.) Barry v. Quality Steel Products, Inc., supra, 263 Conn. at 434-35, 820 A.2d 258.
In Barry, "[w]e [took the] opportunity to clarify our approach to the doctrine of superseding cause and its continuing validity in our tort jurisprudence.... [W]e conclude[d] that the doctrine ... no longer serve[d] a useful purpose in our jurisprudence when a defendant claims that a subsequent negligent act by a third party cuts off its own liability for the plaintiff's injuries.... [We explained] that under those circumstances, superseding cause instructions serve to complicate what is fundamentally a proximate cause analysis. Specifically, we [stated] that, because our statutes allow for apportionment among negligent defendants; see General Statutes § 52-572h;[10] and because Connecticut is a comparative negligence jurisdiction; General Statutes § 52-572o;[11] the simpler and less confusing approach to cases, such as [Barry], [in which] the jury must determine which, among many, causes contributed to the [plaintiff's] injury, is to couch the analysis in proximate cause rather than [to allow] the [defendant] to raise a defense of superseding cause." Barry v. Quality Steel Products, Inc., supra, 263 Conn. at 436-39, 820 A.2d 258.
We also noted that, in addition to possibly confusing the jury, a separate instruction on the superseding cause doctrine was unnecessary because "the term superseding cause merely describes more fully the concept of proximate cause when there is more than one alleged act of negligence, and is not functionally distinct from the determination of whether an act is a proximate cause of the injury suffered by the plaintiff." Id., at 440, 820 A.2d 258. Indeed, we explained that "[a] superseding cause is, by definition, one that is not reasonably foreseeable. As a result, the doctrine in today's world adds nothing to the requirement of foreseeability that is not already inherent in the requirement of causation.... [Accordingly] it [is] proper for the trial court to instruct only on proximate causation because the substance of the doctrine of superseding cause [is] fully explained in the instruction on proximate cause."[12] (Citation omitted; internal quotation *838 marks omitted.) Id., at 445, 820 A.2d 258.
We also emphasized in Barry, however, that "[o]ur conclusion that the doctrine of superseding cause no longer serves a useful purpose is limited to the situation in cases, such as [Barry], [in which] a defendant claims that its tortious conduct is superseded by a subsequent negligent act or there are multiple acts of negligence. Our conclusion does not necessarily affect those cases [in which] the defendant claims that an unforeseeable intentional tort, force of nature, or criminal event supersedes its tortious conduct.... Nor does our conclusion necessarily affect the doctrine of superseding cause in the area of criminal law.... We leave those questions to cases that squarely present them." (Citations omitted.) Id., at 439 n. 16, 820 A.2d 258. Subsequently, in Archambault v. Soneco/Northeastern, Inc., supra, 287 Conn. 20, 946 A.2d 839, we stated that the superseding cause doctrine was "largely abandoned in Barry in favor of comparative and contributory negligence"; id., at 45, 946 A.2d 839; subject only to certain narrow exceptions, namely, "situations in which an unforeseeable intentional tort, force of nature or criminal event supersedes the defendant's tortious conduct...." Id., at 44, 946 A.2d 839.
It is this language that the Appellate Court relied on in concluding, like the plaintiff, that, because workers' compensation cases were not included on Archambault's enumerated list of exceptions, this court did not intend to exempt them from Barry's purview. In Barry, however, this court abrogated the superseding cause doctrine for negligence cases only because, in those cases, a jury is tasked with apportioning liability in accordance with our comparative fault and apportionment statutes. We simply did not consider whether the doctrine should be abolished in workers' compensation cases. Upon consideration of that question in the present case, we agree with the board that the concerns that caused us to abrogate the doctrine in Barry simply are not implicated in our workers' compensation scheme, which, in contrast to our comparative negligence tort scheme, is a no-fault compensation system that imposes a form of strict liability on employers. See, e.g., Doe v. Yale University, 252 Conn. 641, 672, 748 A.2d 834 (2000) ("[t]he purpose of the [act] ... is to provide compensation for injuries arising out of and in the course of employment, regardless of fault" [citation omitted; internal quotation marks omitted]); see also Durniak v. August Winter & Sons, Inc., 222 Conn. 775, 782, 610 A.2d 1277 (1992) (observing that comparative negligence statute is inapplicable to workers' compensation cases); O'Connor v. O'Connor, 201 Conn. 632, 654, 519 A.2d 13 (1986) (workers' compensation scheme "eschews investigation into the possible negligence of the [employer's] conduct and limits the amount of damages the [employee]... may recover").
*839 Furthermore, as our previous discussion makes clear, we abrogated the superseding cause doctrine in Barry not because the concept of superseding cause is inherently incompatible with our proximate cause jurisprudence but out of concern that a separate instruction concerning the doctrine might confuse jurors by causing them to ignore or discount the comparative fault and apportionment principles underlying § § 52-572h and 52-572o. Workers' compensation cases, however, are not decided by juries but, rather, by trial commissioners. In such cases, there is not the same concern that the trier of fact will be confused by the concept of a superseding cause in deciding the element of causation. In the present case, therefore, we may assume that, when the commissioner referred to the decedent's accidental overdose as a "superseding cause" of his death, his use of the term accurately reflected his finding as to the causal effect of the decedent's ingestion of excessive quantities of Oxycodone and Seroquel, that is, that it broke the chain of causation between the decedent's compensable work injuries and his death.
The commissioner's application of the superseding cause doctrine is in accord with the approach advocated by Professor Arthur Larson for determining causation when an employee, having suffered a compensable primary injury during the course of his employment, later sustains a second injury outside the course of employment for which the employee seeks compensation, claiming that the second injury relates back to the primary injury in a sufficiently direct way. Professor Larson explains: "A distinction must be observed between causation rules affecting the primary injury ... and causation rules that determine how far the range of compensable consequences is carried, once the primary injury is causally connected with the employment. As to the primary injury, it has been shown that the `arising' test is a unique one quite unrelated to common-law concepts of legal cause, and... the employee's own contributory negligence is ordinarily not an intervening cause preventing initial compensability.[13] *840 But when the question is whether compensability should be extended to a subsequent injury or aggravation related in some way to the primary injury, the rules that come into play are essentially based [on] the concepts of `direct and natural results,' and of [the employee's] own conduct as an independent intervening cause."[14] 1 A. Larson & L. Larson, Workers' Compensation (2011) § 10.01, p. 10-2. "The basic rule is that a subsequent injury, whether an aggravation of the original injury or a new and distinct injury, is compensable if it is the direct and natural result of a compensable primary injury." Id., at pp. 10-2 through 10-3. Professor Larson further explains that, when a subsequent injury or aggravation of the primary injury arises out of what he describes as a "quasi-course" of employment activity,[15] such as a trip to the doctor's office for treatment of the primary injury, "the chain of causation should not be deemed broken by mere negligence in the performance of that activity... but only by intentional conduct which may be regarded as expressly or impliedly forbidden by the employer." Id., at § 10.5, p. 10-11. Consequently, all the medical consequences and sequelae that flow from the primary injury are compensable. Thus, for example, an injured worker may recover for a new injury or an aggravation of a compensable injury resulting from medical treatment on the theory that the initial injury is the cause of all that follows.
"When, however, the injury following the initial compensable injury does not arise out of a quasi-course activity, as when [an employee] with an injured hand engages in a boxing match, the chain of *841 causation may be deemed [to be] broken by either intentional or negligent [employee] misconduct." Id. Thus, Professor Larson explains that "compensability can be defeated by a certain degree of employee misconduct, and ... that degree is something beyond simple negligence, and can best be described as an intentional violation of an express or implied prohibition in the matter of performing the act." Id., at p. 10-12. Professor Larson notes that "[o]ne advantage of the test of implied prohibition is that it can be reduced to two reasonably measurable requirements: The first is that the employer would have forbidden the act if it had had an opportunity to express itself on the subject; the second is that the employee knew or should have known of this fact." Id. at "As to what constitutes [employee] negligence, in these cases it often takes the form of rashly undertaking a line of action with knowledge of the risk created by the weakened member...."[16] Id., at § 10.06[3], p. 10-17.
Professor Larson provides several examples of subsequent injury cases in which the reviewing court determined that the fact finder reasonably had concluded that the chain of causation was broken by an intervening superseding cause. Of particular relevance to the present case is Carr v. Unit No. 8169/Midwestern Distribution, 237 Kan. 660, 703 P.2d 751 (1985), in which the Kansas Supreme Court concluded that an employee's hospitalization and medical treatment, which resulted from his overdose of pain medication that he was taking to treat a compensable injury, were not, as a matter of law, the direct and natural results of the primary injury. Id., at 666, 703 P.2d 751; see also 1 A. Larson & L. Larson, supra, § 10.04, at p. 10-9 n. 5. He also cites Williams v. White Castle Systems, Inc., 173 S.W.3d 231 (Ky.2005), in which the Kentucky Supreme Court upheld the lower court's determination that an employee's drug overdose, following surgery for a primary injury, was an independent, intervening cause of his death. Id., at 235-36; see also 1 A. Larson & L. Larson, supra, § 10.09[4], at p. 10-28 n. 24. As in the present case, the decedent in Williams died from multiple drug toxicity resulting from his ingestion of excessive quantities of drugs, only some of which he was taking for a compensable injury.[17] *842 See Williams v. White Castle Systems, Inc., supra, at 233. In In re Death of Sade, 649 P.2d 538 (Okla.1982), another case directly on point, the Oklahoma Supreme Court upheld the trial court's determination that an employee's death was not the direct and natural consequence of his compensable arm injury but, instead, resulted from his voluntary, simultaneous ingestion of excessive quantities of pain medication and alcohol. Id., at 540-41. As in the present case, the employee in that case had been taking the pain medication to treat a compensable injury. See id., at 540. The court nevertheless determined that the employee's conduct in consuming excessive quantities of that medication together with excessive quantities of alcohol intervened to break the chain of causation. See id., at 540-41.
Although this court has never expressly adopted the direct and natural consequence rule for subsequent injury cases, our case law indicates that we effectively have applied the rule in assessing the scope of an employer's liability in those cases. See, e.g., Dehron v. Clark, 122 Conn. 592, 597, 191 A. 526 (1937) (concluding that intervening cause broke chain of proximate cause and citing cases from other jurisdictions in which compensation was denied when "a new injury, or the aggravation of the original injury resulting from medical or surgical treatment, was not directly traceable to the original injury, but arose instead from the intervention of an independent cause"); Lemieux v. Highland Dairy Co., 121 Conn. 483, 484, 185 A. 433 (1936) (concluding "that the chain of causation between the injuries suffered at the time of the [work-related] accident and the death was broken by the [intervening] appendicitis ... [such] that there was no unbroken chain of causation between the death and the accident"); see also Imbrogno v. Stamford Hospital, 28 Conn.App. 113, 119, 612 A.2d 82 ("temporary total disability benefits were denied on the basis of an intervening event, unrelated to the compensable injury, which broke the chain of causation linked to the original, compensable injury"), cert. denied, 223 Conn. 920, 615 A.2d 507 (1992). Thus, in subsequent injury cases involving multiple causes, the concept of a superseding causal agent breaking the chain of proximate causation is not foreign to our jurisprudence.
Our research reveals, moreover, that the direct and natural consequence rule is utilized in many if not most jurisdictions for determining causation in subsequent injury cases. See, e.g., Ex parte Pike County Commission, 740 So.2d 1080, 1084 (Ala.1999); Parris-Eastlake v. State, 26 P.3d 1099, 1105 and n. 21 (Alaska 2001); Lou Grubb Chevrolet, Inc. v. Industrial Commission, 174 Ariz. 23, 26, 846 P.2d 836 (App.1992); Preway, Inc. v. Davis, 22 Ark. App. 132, 134-35, 736 S.W.2d 21 (1987); Travelers Ins. Co. v. Savio, 706 P.2d 1258, 1265 (Colo. 1985); Korsak v. Hawaii Permanente Medical Group, Inc., 94 Hawai`i 297, 305, 12 P.3d 1238 (2000); Nance v. Harvey County, 263 Kan. 542, 549, 952 P.2d 411 (1997); Addington Resources, Inc. v. Perkins, 947 S.W.2d 421, 423 (Ky. App.1997); Adkins v. Rives Plating Corp., 338 Mich. 265, 273, 61 N.W.2d 117 (1953); Meils ex rel. Meils v. Northwestern Bell *843 Telephone Co., 355 N.W.2d 710, 715 (Minn. 1984); Warpinski v. State Industrial Ins. System, 103 Nev. 567, 569, 747 P.2d 227 (1987); Starr v. Charlotte Paper Co., 8 N.C.App. 604, 610-11, 175 S.E.2d 342, cert. denied, 277 N.C. 112 (1970); Anderson v. Westfield Group, 259 S.W.3d 690, 696 (Tenn.2008); Wilson v. Workers' Compensation Commissioner, 174 W.Va. 611, 616, 328 S.E.2d 485 (1984). We agree with these courts that the rule provides the best framework for analyzing the element of proximate cause in cases involving a subsequent injury or an aggravation of an earlier, primary injury. It also accords with the approach that our own courts have utilized in deciding these questions, if not in name then in substance.
It bears emphasis, however, as Professor Larson notes, that "[d]ecisions in these sorts of cases are necessarily fact driven"; 1 A. Larson & L. Larson, supra, § 10.04, at p. 10-10.2; and, therefore, results will vary depending on the case. Consequently, whether a sufficient causal connection exists between the employment and a subsequent injury is, in the last analysis, a question of fact for the commissioner. It is axiomatic that, in reaching that determination, the commissioner often is required to "draw an inference from what he has found to be the basic facts. [As we previously have explained] [t]he propriety of that inference ... is vital to the validity of the order subsequently entered. But the scope of judicial review of that inference is sharply limited.... If supported by evidence and not inconsistent with the law, the ... [c]ommissioner's inference that an injury did or did not arise out of and in the course of employment is conclusive. No reviewing court can then set aside that inference because the opposite one is thought to be more reasonable; nor can the opposite inference be substituted by the court because of a belief that the one chosen by the ... [c]ommissioner is factually questionable." (Internal quotation marks omitted.) Fair v. People's Savings Bank, 207 Conn. 535, 539-40, 542 A.2d 1118 (1988). Only if no reasonable fact finder could have resolved the proximate cause issue as the commissioner resolved it will the commissioner's decision be reversed by a reviewing court.
We note, finally, that a related principle also bears on the issue of whether there exists the requisite causal connection between the primary injury and the subsequent injury. Unless causation under the facts is a matter of common knowledge, the plaintiff has the burden of introducing expert testimony to establish a causal link between the compensable workplace injury and the subsequent injury. See Marandino v. Prometheus Pharmacy, 294 Conn. 564, 591-92, 986 A.2d 1023 (2010) ("When ... it is unclear whether an employee's [subsequent injury] is causally related to a compensable injury, it is necessary to rely on expert medical opinion.... Unless the medical testimony by itself establishes a causal relation, or unless it establishes a causal relation when it is considered along with other evidence, the commissioner cannot reasonably conclude that the [subsequent injury] is causally related to the employee's employment." [Citation omitted; internal quotation marks omitted.]); see also Dengler v. Special Attention Health Services, Inc., 62 Conn.App. 440, 449, 774 A.2d 992 (2001) ("[when] an issue of causation for injuries in a workers' compensation case cannot be answered as a matter of common knowledge; Garofola v. Yale & Towne Mfg. Co., [131 Conn. 572, 574, 41 A.2d 451 (1945)]; expert testimony on the issue is necessary" [internal quotation marks omitted]).
Applying these principles to the present case, we agree with the board *844 that the commissioner's finding on the issue of proximate cause, in particular, his determination that the decedent's ingestion of excessive quantities of Oxycodone and Seroquel constituted an intervening event that broke the chain of causation, was supported by the evidence and was not contrary to law. The commissioner expressly credited the testimony of Bayer, who stated that the level of Oxycodone in the decedent's system was twenty times higher than the therapeutic dosage and that the elevated level of Oxycodone likely would not have been fatal if the decedent had not simultaneously overdosed on Seroquel. There also was evidence to support the commissioner's finding that the decedent's treatment with Oxycodone and his treatment with Seroquel were unrelated, and that the two drugs can be taken together safely. The evidence further supports the commissioner's finding that the decedent received repeated instructions and counseling regarding the proper use of controlled substances prescribed for pain control and entered into a controlled substances agreement as part of his treatment plan.
In addition, the plaintiff presented no expert testimony to show any medical causal connection between the overdose and the decedent's primary compensable injury. Compare Osborn v. Bureau of Workers' Compensation, 134 Ohio App.3d 645, 646, 648, 731 N.E.2d 1189 (1999) (summary judgment in favor of employer was improper when plaintiff, whose decedent had taken small number of pills in excess of prescribed dosage, offered expert testimony that drug had effect on cognitive abilities and could lead to confusion over how many pills were to be taken) with Vance v. Trimble, 116 Ohio App.3d 549, 550-51, 554, 688 N.E.2d 1049 (1996) (summary judgment in favor of employer was proper when evidence supported conclusion that death of employee, who had taken approximately eighteen to twenty pills immediately before death when physician had prescribed only one pill every three to four hours, was result of purposely self-inflicted drug overdose and intentional misuse of prescribed controlled substance), appeal dismissed, 80 Ohio St.3d 1208, 685 N.E.2d 539 (1997). For example, there was no evidence that a side effect of Oxycodone is confusion, which in turn could have caused the decedent to overdose, or that the Oxycodone was so ineffective in alleviating serious pain that the plaintiff could have overmedicated to obtain relief.[18] As we previously noted, there was no evidence in the record that the decedent was addicted to Oxycodone. The sole expert testimony that the plaintiff did proffer to establish that the decedent's depression was causally related to his employmentthat is, his compensable injuries made him more depressedwas not credited by the commissioner.
Accordingly, it was reasonable for the commissioner to find that the decedent ingested excessive quantities of Oxycodone and Seroquel for reasons that bore no relationship to his employment related injury. We therefore conclude that the commissioner's finding that the decedent's conduct constituted a superseding cause of his death was a proper application of the law to the facts.

II
We next address the plaintiff's contention that the Appellate Court's proximate cause analysis was inconsistent with our statement in Birnie v. Electric Boat Corp., *845 supra, 288 Conn. 392, 953 A.2d 28, that the substantial factor causation standard is met if "the employment, or the risks incidental thereto, contribute[d] to the development of the injury in more than a de minimis way." Id., at 412-13, 953 A.2d 28. As we noted previously, the plaintiff contends that Birnie stands for the proposition that, once the commissioner determined that Oxycodone was an actual cause of the decedent's death, he was required to find it to be a proximate cause unless he found that it contributed to the death in no more than a de minimis way, which, under the facts of this case, he reasonably could not have done. As we explain more fully hereinafter, the plaintiff's reliance on Birnie is misplaced. When read in context, it is clear that the language in Birnie on which the plaintiff relies was not intended to divest the commissioner of the authority to deny a claim even in a case, like the present one, in which the commissioner finds that the relationship between the decedent's employment, although a cause in fact of the injury in the sense that the injury would not have occurred but for the decedent's employment, and his death nevertheless is too attenuated to satisfy the proximate cause requirement.
It is necessary to recite the facts of Birnie in some detail in order to explain why that case does not support the plaintiff's contention. The plaintiff, Jean Birnie, was awarded death benefits under the federal Longshore and Harbor Workers' Compensation Act (Longshore Act), 33 U.S.C. § 901 et seq., following the death of her husband, a former employee of Electric Boat Corporation (Electric Boat), from a heart attack. Id., at 394-96, 953 A.2d 28. In connection with that award, the administrative law judge found that Birnie's husband's exposure to certain workplace toxins "[was] a contributing factor in his [heart attack] and death." (Internal quotation marks omitted.) Id., at 399, 953 A.2d 28. Birnie subsequently sought and was awarded survivor's benefits under the act.[19] In her state workers' compensation action, Birnie claimed that Electric Boat "was barred [by the doctrine of collateral estoppel] from relitigating the issue of causation... because the issue was fully litigated and necessarily determined in the [prior federal] proceeding ... and because she had the same burden of proof under the ... act as she did under the Longshore Act." Id., at 400-401, 953 A.2d 28. Electric Boat contended that it was not precluded from relitigating the issue of causation because "the causation standard [that had been] applied by the administrative law judge under the Longshore Act namely, that the employment must be a contributing factor in producing the injury[was] less onerous than the standard under the ... act, which requires that the employment be a substantial factor in producing the injury." Id., at 402, 953 A.2d 28. Although the commissioner agreed with Electric Boat that the causation standard under the Longshore Act was "a more relaxed standard [than the substantial factor standard]"; id., at 401, 953 A.2d 28; he nevertheless concluded that Electric Boat was barred from relitigating causation in the state action because, in his view, "the evidence [that] support[ed] the... decision [under the Longshore Act] and [that] was found to be the more persuasive evidence ... also satisfied the [causation] standard ... [under the act]...." (Internal quotation marks omitted.) Id., at 401-402, 953 A.2d 28.
The board upheld the commissioner's decision, and Electric Boat appealed, claiming that the commissioner incorrectly had concluded that the doctrine of collateral *846 estoppel precluded it from relitigating the issue of causation in the state action. Id., at 395, 402, 953 A.2d 28. We ultimately determined that the doctrine of collateral estoppel did not bar the state action because "the scope of the contributing factor standard [that the administrative law judge] had applied" was not clear from [his] decision under the Longshore Act; id., at 396, 953 A.2d 28; and, consequently, "there [was] no basis ... to conduct an adequate comparison of the contributing factor and the substantial factor causation standards" for the purpose of deciding whether the issue of causation had been fully and fairly litigated in the federal action under the Longshore Act. Id.
First and foremost, it should be noted that Birnie was not a case in which compensation benefits were being sought for a subsequent injury that occurred outside the course of employment and that was claimed to be causally connected to a primary workplace injury. Rather, it was a case involving a primary injury claimed to have arisen out of and in the course of employment. As we have explained in part I of this opinion, the causation analysis in subsequent injury cases implicates different considerations because such injuries do not literally arise in the course of employment, as the act generally requires.
Second, in reaching our conclusion in Birnie, we undertook an in-depth examination of the contributing and substantial factor standards to facilitate a comparison of the two tests. It was in this context that we observed that the substantial factor test requires that the employment contribute to the injury "in more than a de minimis way." Id., at 413, 953 A.2d 28. The "more than ... de minimis" language is preceded, however, by statements explaining that "the substantial factor standard is met if the employment materially or essentially contributes to bring about an injury"; (emphasis in original) id., at 412, 953 A.2d 28; which, by contrast, "does not connote that the employment must be the major contributing factor in bringing about the injury ... nor that the employment must be the sole contributing factor in development of an injury." (Citation omitted; emphasis in original.) Id. Thus, it is evident that we did not intend to lower the threshold beyond that which previously had existed.
On the contrary, as the Appellate Court has explained: "The procedural posture that provided the context in which the court in Birnie addressed the substantial factor test, as well as the context in which the [relevant] quoted language ... appears, underscores [the Appellate Court's] conclusion.... [I]n Birnie, when [the court] set out the history and parameters of the substantial factor test, it was confronted with determining whether the substantial factor test was more or less rigorous than the test applied by federal administrative law judges in adjudications involving the federal law. As a result, it is clear that the court's aim was not to clarifymuch less alterthe substantial factor test but to explicate it in such a way as to facilitate a fair comparison with the federal test in question. The substantial factor test remains as it was prior to Birnie...." Voronuk v. Electric Boat Corp., 118 Conn.App. 248, 255, 982 A.2d 650 (2009).
Indeed, we emphasized in Birnie that, "[because] the question of whether the conditions of employment are a substantial factor in bringing about an injury is one of fact ... and considering that what constitutes a substantial factor will... vary with the circumstances of each case, an attempt to articulate a more precise standard may, in practice, be unnecessarily restrictive, and may inadvertently foreclose a claimant's right to compensation. See, e.g., Mahoney v. Beatman, [110 Conn. 184, 195-96, 147 A. 762 (1929)] (`The *847 criticism ... usually leveled at the [substantial factor] test ... is that ... it is too general.... The answer is that the formula cannot be reduced to any lower terms.... It presents a question of fact.... The answer to any such [question] when proposed to [the commissioner] must be found by the [commissioner] after a consideration of all the facts that bear upon it.' ...)." Birnie v. Electric Boat Corp., supra, 288 Conn. at 413 n. 11, 953 A.2d 28. If reasonable minds can disagree as to whether the plaintiff has satisfied her burden of establishing proximate causeas is the present case herewe will not disturb the commissioner's finding even if we might reach a different conclusion.
Finally, the plaintiff claims that the Appellate Court incorrectly concluded that the decedent's employment must be the sole cause of his death in order for his employment to be considered a proximate cause. The plaintiff further claims that, as a result of this threshold impropriety, the Appellate Court improperly determined that, to recover under the act, she was required to establish a causal connection between the decedent's use of Seroquel and his employment. In support of this contention, the plaintiff refers to the statement of the Appellate Court that, "[i]n the absence of any credible evidence tending to show that the decedent's depression and subsequent prescription for Seroquel were related to his compensable injuries, that he purposely killed himself for some reason arising out of his compensable injuries or that the dosage of Oxycodone alone could have caused [his] death, the causal link between his compensable injuries and his death simply becomes too attenuated to support a reasonable inference that the injuries and death were connected." Sapko v. State, supra, 123 Conn.App. at 29-30, 1 A.3d 250.
Reading this statement in the context of the entire opinion, we understand the Appellate Court's remarks merely as expressing the view that the commissioner might have reached a different result if he had found a causal link between the decedent's compensable injuries and his use of Seroquel. We do not read the challenged remarks as suggesting that the commissioner was required to find such a link in order to accept the plaintiff's claim. Although perhaps imperfectly stated, the Appellate Court was simply explaining that, in the absence of any credible evidence connecting the decedent's use of Seroquel to his employment, and in light of the evidence that the commissioner did find credible, it was reasonable for the commissioner to conclude that the causal link between the decedent's death and his compensable injuries was too tenuous to support a finding of proximate cause. For the reasons previously set forth in this opinion, we concur in that assessment.[20]
The judgment of the Appellate Court is affirmed.
In this opinion the other justices concurred.
NOTES
[1] General Statutes § 31-306 provides in relevant part: "(a) Compensation shall be paid to dependents on account of death resulting from an accident arising out of and in the course of employment or from an occupational disease as follows:

* * *
"(4) If there is a presumptive dependent spouse surviving and also one or more presumptive dependent children, all of which children are either children of the surviving spouse or are living with the surviving spouse, the entire compensation shall be paid to the surviving spouse in the same manner and for the same period as if the surviving spouse were the sole dependent...."
[2] The decedent was an employee of the state department of correction. GAB Robins of North America, Inc., the state's workers' compensation administrator, also is a defendant but did not participate in this appeal. In the interest of simplicity, we refer to the state as the defendant in this opinion.
[3] "[T]he doctrine of superseding cause serves as a device by which one admittedly negligent party can, by identifying another's superseding conduct, exonerate himself from liability by shifting the causation element entirely elsewhere.... If a third person's negligence is found to be the superseding cause of the plaintiff's injuries, that negligence, rather than the negligence of the party attempting to invoke the doctrine of superseding cause, is said to be the sole proximate cause of the injury." (Citation omitted; internal quotation marks omitted.) Barry v. Quality Steel Products, Inc., supra, 263 Conn. at 434-35, 820 A.2d 258. "The function of the doctrine is to define the circumstances under which responsibility may be shifted entirely from the shoulders of one person, who is determined to be negligent, to the shoulders of another person, who may also be determined to be negligent, or to some other force." (Internal quotation marks omitted.) Id., at 434, 820 A.2d 258.

"In Barry, we questioned the continuing viability of the doctrine of superseding cause and concluded that the rationale supporting the abandonment of the doctrine ... outweighe[d] any of the doctrine's remaining usefulness in our modern system of torts.... We [decided] that [a separate] instruction on superseding cause complicates what is essentially a proximate cause analysis and risks jur[or] confusion." (Internal quotation marks omitted.) Archambault v. Soneco/Northeastern, Inc., 287 Conn. 20, 43, 946 A.2d 839 (2008). As we explain hereinafter, we limited our conclusion in Barry to superseding acts of negligence and left open the question of whether the doctrine would continue to apply in cases in which the defendant claims that an unforeseeable intentional tort, force of nature or criminal event supersedes his or her tortious conduct. See Barry v. Quality Steel Products, Inc., supra, 263 Conn. at 439 n. 16, 820 A.2d 258.
[4] "The commissioner's findings and the exhibits before him revealed the following. Two [prescription] bottles were found near the decedent's body. One bottle [contained] Oxycodone and had printed on it instructions that between one and three pills were to be taken each day. The decedent refilled his prescription on August 3, 2006. The prescription contained ninety pills, yet only nineteen pills were in the bottle when police found it on August 18, 2006. The Seroquel prescription had been filled on August 9, 2006. The instructions [on that bottle] stated that one to two pills could be taken per night; only eleven of the sixty pills remained in the bottle on August 18, 2006. [If] the decedent [had] taken the maximum allowable dosage each day, at most forty-five Oxycodone and eighteen Seroquel pills should have been missing. Instead, seventy-one Oxycodone and forty-nine Seroquel pills were missing." Sapko v. State, supra, 123 Conn.App. at 22-23 n. 4, 1 A.3d 250.
[5] The plaintiff appears to read this finding literally to mean that the commissioner concluded that the decedent did not intend to take as many pills as he actually did take. It is clear both from the commissioner's decision and from the evidence presented, however, that the commissioner used the term "accidental" merely to express the view that the decedent was not attempting to commit suicide by taking the pills.
[6] As we explain more fully hereinafter, if a claimant's employment is a substantial factor in the claimant's injury, then that employment is deemed to be a proximate cause of the injury.
[7] Specifically, the plaintiff contends that, "[o]nce the commissioner applied the superseding [cause] doctrine, it is reasonably inferred that he undertook no further proximate cause analysis and [simply] pronounced that the work injuries were not a proximate cause of the [decedent's] death."
[8] As we previously noted, the plaintiff did not raise a claim under Birnie in the Appellate Court, where she contended only that the board improperly had determined that the commissioner's application of the superseding cause doctrine was proper notwithstanding Barry. See Sapko v. State, supra, 123 Conn.App. at 24, 1 A.3d 250. We nevertheless address the plaintiff's claim under Birnie because the defendant has raised no objection to our doing so, the defendant has addressed this claim thoroughly in its brief, and the defendant will not be prejudiced in any way by our review of the issue.
[9] We note that the plaintiff raised this claim for the first time in her reply brief and that we ordinarily do not address such tardily raised claims. We nevertheless elect to address the claim, first, because the issue implicated by the claim, namely, the applicability of the superseding cause doctrine to workers' compensation cases, is an important one that, we conclude, was wrongly decided by the Appellate Court, second, because the defendant had briefed the issue in the Appellate Court, and, third, because the defendant is in no way prejudiced by our review or resolution of the claim. See, e.g., Hasychak v. Zoning Board of Appeals, 296 Conn. 434, 437 n. 4, 994 A.2d 1270 (2010).
[10] General Statutes § 52-572h (b) provides in relevant part: "In causes of action based on negligence, contributory negligence shall not bar recovery in an action by any person or the person's legal representative to recover damages resulting from personal injury, wrongful death or damage to property if the negligence was not greater than the combined negligence of the person or persons against whom recovery is sought...."
[11] General Statutes § 52-572o (a) provides: "In any claim under sections 52-240a, 52-240b, 52-572m to 52-572q, inclusive, or 52-577a, the comparative responsibility of, or attributed to, the claimant, shall not bar recovery but shall diminish the award of compensatory damages proportionately, according to the measure of responsibility attributed to the claimant."
[12] We further explained in Barry that, "[h]istorically, the [superseding cause] doctrine reflects the courts' attempt to limit the defendants' liability to foreseeable and reasonable bounds.... In this regard, the doctrine ... involves a question of policy and foreseeability regarding the actions for which a court will hold a defendant accountable. This aspect of superseding cause is already incorporated in our law regarding proximate causation. As some commentators have noted, however, the doctrine was also shaped in response to the harshness of contributory negligence and joint and several liability.... Under this reasoning, in order to avoid what some courts determined was an undue burden on the plaintiff under contributory negligence regimes, courts developed certain ameliorative doctrines, which identified some aspect of the defendant's negligent act that served as a basis for shifting the plaintiff's negligence to the defendant so that the plaintiff could recover for his losses.... Thus, the courts sometimes labeled a defendant's negligence as an intervening act that cut off any contributory negligence of the plaintiff, which, had it not been superseded by the defendant's negligence, would have constituted a total bar to recovery." (Citations omitted.) Barry v. Quality Steel Products, Inc., supra, 263 Conn. at 440-41, 820 A.2d 258.
[13] Professor Larson's distinction with respect to causation rules in primary injury cases is consistent with our own case law. See, e.g., Labadie v. Norwalk Rehabilitation Services, Inc., 274 Conn. 219, 237, 875 A.2d 485 (2005) ("[a]n injury [that] occurs in the course of the employment will ordinarily [also] arise out of the employment" [internal quotation marks omitted]). We explained the reason for this long ago: "In various attempts at an abstract statement of the meaning of the expression `arising out of ... employment,' the terms `causal,' `cause,' and `proximate cause,' are used with some freedom, and it must be confessed with some looseness of meaning and much vagueness of application. These terms come to us freighted with the meaning given to them in the law of negligence, precise and definitely limited, and used in the discussion of cases [in which] liability is based on fault.... Under the compensation cases, [in which] negligence, whether of the master or servant, plays no part, these terms do not seem to be used with the same definiteness of meaning. In the strict legal sense of the terms, as used generally in [tort] law, an employment can seldom be the cause, still less the proximate cause, of a personal injury received by a worker in that employment." Fiarenzo v. Richards & Co., 93 Conn. 581, 586, 107 A. 563 (1919).

Thus, although we often state that traditional concepts of proximate cause govern the analysis of causation in workers' compensation cases, our case law makes clear that, with respect to primary injuries, the concept of proximate cause is imbued with its own meaning. In such cases, "[t]he employment may be considered as causal in the sense that it is a necessary condition out of which, necessarily or incidentally due to the employment, arise the facts creating liability, and that is the extent to which the employment must be necessarily connected in a causal sense with the injury. If we run over the cases in which compensation has been awarded, it will be found to be rarely truealthough it may be truethat the employment itself was, in any hitherto recognized use of the words in law, either the cause or the proximate cause; and yet the decisions are right, because, to the rational mind, the injury did arise out of the employment. The real truth appears to be that these words get their meaning, as used in the compensation cases, from the very phrase they are used to define... `arising out of and in the course of ... employment.' The terms in question, as hitherto used, if applied strictly, are a limitation [on] the scope of the [a]ct much more stringent than any construction placed [on] it by the courts. The causative danger `need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that as a rational consequence.'... This makes the employment only a necessary condition ... and not a cause in any accurate legal use of the word." (Citations omitted.) Id., at 587, 107 A. 563; see also Larke v. John Hancock Mutual Life Ins. Co., 90 Conn. 303, 308, 97 A. 320 (1916) ("[i]n a general way ... we may say that an injury to an employee is said to arise in the course of his employment when it occurs within the period of his employment, at a place where he may reasonably be, and while he is reasonably fulfilling the duties of his employment, or engaged in doing something incidental to it").
[14] We note that "[t]he terms intervening cause and superseding cause have been used interchangeably [in our case law]. See, e.g., Corey v. Phillips, 126 Conn. 246, 253-56, 10 A.2d 370 (1939). The Restatement [Second] of Torts makes clear [however] that the doctrine is properly referred to as superseding cause, and that it embodies within it the concept of an intervening force. 2 Restatement (Second), Torts §§ 440 through 453 [1965]." (Internal quotation marks omitted.) Craig v. Driscoll, 262 Conn. 312, 332 n. 16, 813 A.2d 1003 (2003).
[15] "The `quasi-course of employment' doctrine applies to activities undertaken by the employee [that] follow a compensable injury. And, although they take place outside the time and space limits of normal employment and would not be considered employment activities for usual purposes, they are nevertheless related to the employment in the sense that they are necessary or reasonable activities that would not have been undertaken but for the compensable injury." Excel Corp. v. Industrial Claim Appeals Office, 860 P.2d 1393, 1394 (Colo.App.1993).
[16] The Tennessee Supreme Court has explained the direct and natural consequence rule as follows. "Tennessee courts have applied the intervening cause principle as a way of assessing the scope of an employer's liability for injuries occurring after a compensable injury.... [Tennessee cases] have expressed the intervening cause principle in various ways. In one case, for example, [the court] stated that it will be found that if the injured employee, knowing of his weakness, rashly undertakes to do things likely to result in harm to himself, the chain of causation is broken by his own negligence.... In another case, [the court] stated that every natural consequence that flows from the [work-related injury or disease] arises out of the employment, unless it is the result of an independent intervening cause attributable to the employee's intentional conduct.... In yet another case, [the court] observed that when the primary injury arises out of the employment, every natural consequence that flows from that injury arises out of the employment as well, provided those consequences result directly and without intervening cause from the primary injury.... [Although] stated in different ways, [the] cases make clear that an employee's intervening conduct can break the chain of causation necessary to impose liability for a subsequent injury based on the direct and natural consequences concept." (Citations omitted; internal quotation marks omitted.) Anderson v. Westfield Group, 259 S.W.3d 690, 697 (Tenn.2008).
[17] We note, however, that Professor Larson distinguishes subsequent injuries related to primary injuries that result from narcotics addiction or alcoholism. He observes that "[s]everal cases have held that, [when] drugs used in the treatment of a compensable injury have led to narcotics addiction or alcoholism, the ensuing consequences were compensable. In these cases, although there might appear to have been a substantial quantity of employee fault, the final result was the product of a strong causal force emanating from the employmentthe use of drugs in treatmentcombining with some frailty on the part of the employee in succumbing to addiction or alcoholism." A. Larson & L. Larson, supra, § 10.09[5], at p. 10-28. In the present case, however, the plaintiff presented no evidence to support a finding that the decedent had become addicted to Oxycodone, and the commissioner made no such finding.
[18] We do not intend to suggest by these examples that the plaintiff necessarily would have been entitled to a judgment in her favor had she provided such evidence.
[19] Throughout our discussion of Birnie, all references to the "act," as opposed to the Longshore Act, are to the state Workers' Compensation Act.
[20] We note that the plaintiff cites to several workers' compensation cases from other jurisdictions involving fact patterns similar to the present case that, she claims, support the compensability of her claim. Our review of these cases reveals that they are inapposite because they involve different statutory schemes and different claims, and because they do not support the conclusion that the commissioner's determination, in light of the specific facts of this case, was unreasonable and, therefore, unsupportable. Put differently, although the results in those other cases differ from the result in the present case, that fact alone does not support the plaintiff's contention that the commissioner reasonably could not have reached the result that he did.