******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

JOHN RAUSER *v.* PITNEY BOWES,
INC., ET AL.
(AC 41025)

Alvord, Keller and Beach, Js.

*Syllabus*

The plaintiff, who was employed by the named defendant, P Co., appealed
to this court from the decision of the Compensation Review Board
affirming the decision of the Workers' Compensation Commissioner
dismissing his claim for benefits related to injuries that he had sustained
when he was assaulted in a parking lot following a social gathering with
fellow employees at bar and restaurant, while on work related travel
for P Co. In dismissing the plaintiff's claim for benefits, the commissioner
determined that the plaintiff failed to satisfy his burden to show that
his injuries arose out of and in the course of his employment, which
was based on his finding that, between 8 p.m. and midnight on the night
when the plaintiff was socializing with his fellow employees at the
restaurant, he was engaged in a substantial deviation from his work
related activities. On appeal, the plaintiff claimed that the board erred
in affirming the commissioner's decision because the commissioner
failed to set forth a factual determination with respect to whether, at
the time he sustained the subject injuries, he was returning to his rental
vehicle to return to his hotel room, and, therefore, he was on the direct
route of his business travel. *Held* that the plaintiff failed to demonstrate
that either the commissioner or the board misapplied the law in evaluat-
ing his claim for workers' compensation benefits: the evidence amply
supported the commissioner's determination that for several hours,
between 8 p.m. and midnight, the plaintiff was engaged in a substantial
deviation from his employment activities, and the commissioner did not
make any express finding with respect to whether the plaintiff sustained
a compensable injury while on the direct route of his business travel
because the plaintiff failed to present any persuasive evidence in support
of that theory of recovery, as the evidence that the plaintiff relied on
in support of his claim demonstrated only the location where the assault
occurred, and the mere presence of the plaintiff at the scene of the
assault, in and of itself, did not demonstrate that he had completed his
deviation and had resumed his business travel; moreover, even if this
court were to view certain testimony of the plaintiff and a coworker as
dispositive evidence that, at the time of the assault, the plaintiff was
returning to his vehicle to return to his hotel and, thus, as evidence that
he was assaulted while on the direct route of his business travel, the
plaintiff was unable to rely on that testimony in support of his claim,
as the commissioner found that it was not credible and the plaintiff
did not demonstrate that the factual findings that resulted from the
commissioner's credibility determinations were unreasonable.

Argued March 19—officially released June 11, 2019

*Procedural History*

Appeal from the decision of the Workers' Compensa-
tion Commissioner for the Third District dismissing the
plaintiff's claim for certain benefits, brought to the Com-
pensation Review Board, which affirmed the commis-
sioner's decision, and the plaintiff appealed to this court.
*Affirmed.*

*Michael Kerin*, for the appellant (plaintiff).

*Michael M. Buonopane*, for the appellee (named
defendant).

*Opinion*

KELLER, J. The plaintiff, John Rauser, appeals from the decision of the Compensation Review Board (board), affirming the decision of the Workers' Compensation Commissioner for the Third District (commissioner) dismissing the plaintiff's claim for workers' compensation benefits. The plaintiff claims that the board erred in affirming the commissioner's decision in light of the fact that the commissioner failed to set forth a factual determination with respect to whether, at the time he sustained the injuries for which he sought benefits, he was on the direct route of his business travel.[1] We affirm the decision of the board.

On the basis of the subordinate factual findings made by the commissioner, we set forth the relevant facts as follows. On or about June 11, 2014, the plaintiff was employed by the defendant Pitney Bowes, Inc.,[2] as a director of channel management. He had been employed by the defendant for twenty-eight years. Part of his work related duties required him to develop a rapport with members of the defendant's sales staff in order to understand and evaluate not only what they have sold to the defendant's customers, but to approve or disapprove of their sales methods. On June 8, 2014, the plaintiff and another coworker, both of whom resided in Connecticut, traveled to Spokane, Washington, to meet with local sales staff employed by the defendant. As with prior work related travel of this nature undertaken by the plaintiff to evaluate sales, the defendant paid for expenses related to airfare, lodging, car rental, food, and alcoholic drinks.

The plaintiff had business meetings with Spokane sales staff on June 9 and 10, 2014. On June 11, 2014, a Spokane based sales representative, Trish Lopez, invited the plaintiff and other supervisory staff to a social gathering at a Spokane bar and restaurant named Fast Eddie's All Purpose Pub (Fast Eddie's). Lopez sent the invitations on behalf of Sean Johnson, who was employed by the defendant as a general financial sales specialist. There was no formal agenda for the event, as there would be for a business meeting, and attendance was considered to be voluntary. The invitation, which Lopez sent by e-mail, specified that the gathering at Fast Eddie's was scheduled to begin at 5:30 p.m. The plaintiff and several of his Spokane colleagues attended the gathering. The plaintiff began consuming alcoholic beverages immediately upon his arrival at or about 5:30 p.m. The plaintiff engaged in what he viewed as joking around with his colleagues, although he acknowledged that several of his jokes and comments were "inappropriate and beyond the bounds of what [the defendant] would say is acceptable." For example, the plaintiff offered to assist two of his female colleagues with work matters in exchange for "sexual favors." Only a small portion of the conversation at Fast Eddie's was devoted

to discussing the defendant's interests.

Lopez had been instructed by one of her superiors, Jonathan Allen, to keep an open tab at Fast Eddie's to cover expenses up to $500, but no later than 8 p.m., whichever occurred first. At 8 p.m., Lopez closed the tab incurred at Fast Eddie's, which totaled $304.78. Later, Lopez was reimbursed for this expenditure.

After 8 p.m., the plaintiff and some of his colleagues left Fast Eddie's and went to a neighboring restaurant and bar named Borracho Tacos & Tequilera (Borracho). There, the plaintiff consumed even more alcoholic beverages and continued to make comments of a sexual nature to and in the presence of his coworkers. For example, the plaintiff stated to a female coworker that if she would expose her breasts to him, he would "approve anything" that she sent to him. While at Borracho, one of his coworkers overheard him making a comment of a sexual nature to at least one other patron who was not an employee of the defendant. By 9:30 p.m., the plaintiff was visibly intoxicated, and, by midnight, the plaintiff's blood alcohol content was estimated to be .202, which significantly impaired his judgment, control, memory, skills, ability to react, and ability to assess risk.[3] Moreover, the plaintiff's blood alcohol content greatly exceeded the legal limit for purposes of operating a motor vehicle in Washington.

Shortly after midnight on June 12, 2014, the plaintiff, accompanied by Johnson, exited Borracho. While walking outside in the vicinity of Borracho, several men, who were unknown to the plaintiff and Johnson, beat the plaintiff severely.[4] The plaintiff sustained life threatening injuries for which he required immediate hospitalization. Following his release from the hospital, he underwent significant periods of rehabilitation both in Washington and Connecticut. Although the plaintiff's condition has improved, he continues to experience the effects of some of his injuries, including a diminished sense of taste and smell, as well as difficulty in performing some cognitive functions.

The plaintiff sought workers' compensation benefits related to the injuries he sustained in Spokane. The commissioner held a hearing related to the claim, which the defendant disputed, during which the commissioner considered documentary evidence related to the events at issue, the plaintiff's employment, and his medical treatment following the assault. The commissioner also considered the testimony of the plaintiff and several other witnesses who observed the plaintiff during the events leading up to the assault, including Johnson, Lopez, Desiree Cimarrustti, and Peter Binder. The commissioner went on to consider the testimony of Kevin O'Brien and Robbie Narcisse, both of whom had investigated the relevant events in the course of their employment with the defendant. Additionally, the commissioner considered the testimony of Marc Bayer, a

toxicologist who had analyzed the plaintiff's blood alcohol content and opined with respect to the degree to which the plaintiff's blood alcohol content likely affected him during the events at issue. Finally, the court considered the police reports related to the assault.

In dismissing the claim for benefits, the commissioner found that any business purpose for which the plaintiff was present at Fast Eddie's ended by the time that Lopez paid the bar tab at 8 p.m., and that any food or drink consumed at Fast Eddie's or Borracho after that time was "purely social in nature and unrelated to the business interests of [the defendant]." The commissioner also found that "the intoxication, the sexual comments, and the drinking that continued until the midnight hour constitute a substantial deviation from work in furtherance of the employer's business . . . ." The commissioner concluded that "the [plaintiff] failed in his burden of persuasion to show that the assault arose out of and in the course of his duties for the employer" and that the claim was not compensable.[5]

Following the commissioner's decision, the plaintiff appealed to the board. In relevant part, the plaintiff claimed that the commissioner had erred in his determination that the plaintiff's injuries did not arise out of and in the course of his employment. The plaintiff argued that "he was assaulted and sustained injuries . . . incidental to his work for [the defendant] and he would not have been where he was when he was assaulted if it was not for his business trip to Spokane, Washington and, more specifically, at the work event which was at Fast Eddie's on the night of June 11, 2014."

Relying on the commissioner's factual findings, the board rejected the plaintiff's argument. It stated: "The fundamental question which must be answered here is whether, at the time of the injury, the [plaintiff] had deviated from his employment and was not doing something incidental to his employment. Pertinent to this inquiry, the . . . commissioner found that after 8 p.m. on June 11, 201[4], the [plaintiff] was no longer serving the business interests of the employer. The consumption of food, alcohol, and the nature of the discussions occurring after 8 p.m. on June 11, 201[4], constituted a substantial deviation from activities related to the [defendant's] business. . . . Such factual determinations will not be disturbed unless they are contrary to law, without evidence, or based on unreasonable or impermissible factual inferences. . . . On review, we are not persuaded that the trier's conclusion violates this appellate standard." (Citation omitted; footnote omitted.) The board also stated: "In the present matter, the [defendant's] encouragement of the [plaintiff's] social activities can only be inferred to support the time the claimant spent at Fast Eddie's. After 8 p.m. on the evening in question, the [plaintiff] no longer enjoyed

the express consent or implied acquiescence of his employer for his social pursuits." Accordingly, the board affirmed the commissioner's dismissal of the plaintiff's claim.

The plaintiff argues that it is unnecessary for this court to resolve the issue of whether the commissioner correctly determined that, during the four hours between 8 p.m. and midnight, he had substantially deviated from his work on behalf of the defendant. He relies on the legal proposition that, even after an employee has completed a substantial personal deviation from his work, once he has resumed the direct route of his business travel, any injury occurring on that business route is ordinarily compensable. See, e.g., 2 A. Larson, Larson's Workers' Compensation Law (2018) § 17.03 ("we may also set aside one clearly compensable type of case—that in which the personal deviation has been completed and the direct business route has been resumed"); 2 A. Sevarino, Connecticut Workers' Compensation After Reforms (7th Ed. 2017) § 4.22.9, p. 579 ("[a]ny identifiable and significant deviation from a business trip for personal reasons takes the injured worker out of the course of employment until s/he returns, if ever, to the pursuit of business matters"). Before this court, the plaintiff claims that the board erred in affirming the commissioner's decision in light of the fact that the commissioner failed to make a factual determination with respect to whether, at the time he sustained the injuries for which he sought benefits, he was on the direct route of his business travel.[6]

The plaintiff argues that the evidence demonstrates that he was "on the direct business route of travel from Fast Eddie's . . . to [his] employer provided automobile" when he sustained the injuries underlying his claim. He argues in relevant part: "As the undisputed documentary evidence in the present case demonstrates, the [plaintiff] at the commencement of his being attacked by unknown assailants was returning to the rental car provided for his transportation during his business trip in Spokane, in order to return to his employer provided hotel to begin work the next morning. He fled away from his vehicle, eastward back along his direct business route, for about thirty yards in his attempt to evade his attackers, but was caught and brutally beaten and kicked." The plaintiff further argues: "At the time of his attack, he was in the direct route of his business travel, in the alley serving both the restaurant where his business meeting had occurred and the second restaurant where he had gone with fellow employees to socialize following the business meeting." Additionally, the plaintiff argues that the facts of the present case are similar to the facts at issue in prior decisions in which our Supreme Court determined that claimants were entitled to workers' compensation benefits after they deviated from a business purpose but sustained injury after they later had returned to

business activities. See, e.g., *Carroll* v. *Westport Sanitarium*, 131 Conn. 334, 339, 39 A.2d 892 (1944); *Ohmen* v. *Adams Bros.*, 109 Conn. 378, 385–86, 146 A. 825 (1929); and *Carter* v. *Rowe*, 92 Conn. 82, 85, 101 A. 491 (1917).

The plaintiff argues that "[w]hether or not [he] was on the direct business route back to his rental car and hotel was . . . a key finding of subordinate fact which the commissioner should have made in order properly to apply the law to the facts." Thus, the plaintiff urges us to conclude that the commissioner and the board improperly applied the governing legal principles to the facts of the present case. Furthermore, he urges us to conclude that, in light of the undisputed facts that appear in the record, the commissioner and the board erred in concluding that the injury was not compensable.

"The principles that govern our standard of review in workers' compensation appeals are well established. The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . Neither the . . . board nor this court has the power to retry facts. . . .

"The standard of review to be used by the board when reviewing a commissioner's findings is set forth in Regulations of Connecticut State Agencies § 31-301-8.1 That section directs the board not to retry the case before it, but to determine whether evidence supports the commissioner's finding. . . . [T]he . . . [board's] hearing of an appeal from the commissioner is not a de novo hearing of the facts. . . . [I]t is oblig[ated] to hear the appeal on the record and not retry the facts. . . . [T]he power and duty of determining the facts rests on the commissioner, the trier of facts. . . . [T]he conclusions drawn by [him] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Sellers* v. *Sellers Garage, Inc.*, 92 Conn. App. 650, 650–51, 887 A.2d 382 (2005).

"It is an axiom of [workers'] compensation law that awards are determined by a two-part test. The [claimant] has the burden of proving that the injury claimed arose out of the employment and occurred in the course of the employment. There must be a conjunction of [these] two requirements . . . to permit compensation. . . . An injury is said to arise out of the employment when (a) it occurs in the course of the employment and (b) [it] is the result of a risk involved in the employment or incident to it or to the conditions under which it was required to be performed. . . . [C]ases have held that an injury [occurs] in the course of the employment

when it takes place (a) within the period of the employment, (b) at a place where the employee may reasonably be and (c) while he is reasonably fulfilling the duties of the employment or doing something incidental to it. . . . There must be a conjunction of [these] two requirements [of the test] . . . to permit compensation. . . . The former requirement [of arising out of the employment] relates to the origin and cause of the accident, while the latter requirement [of occurring in the course of employment] relates to the time, place and [circumstance] of the accident. . . . Whether an injury arose out of and in the course of employment is a question of fact to be determined by the commissioner. . . . If supported by competent evidence and not inconsistent with the law, the commissioner's inference that an injury did or did not arise out of and in the course of employment is, thus, conclusive." (Internal quotation marks omitted.) *Mleczko* v. *Haynes Construction Co.*, 111 Conn. App. 744, 748–49, 960 A.2d 582 (2008).

The plaintiff does not make any significant attempt to undermine the commissioner's determination that, between 8 p.m. and midnight, he was no longer at a place he reasonably may have been expected to be in the course of his employment and he was no longer fulfilling the duties of his employment or doing something incidental to his employment. Although the plaintiff attempts to depict his conduct between 8 p.m. and midnight in an employment related light by characterizing it as "[a] period of personal socialization with his fellow employees," he nonetheless acknowledges that "there was sufficient evidence for the . . . commissioner here to have found that there was a substantial deviation from the original business purpose (attending a business function at Fast Eddie's . . .) that caused [him] to leave his hotel and drive to the parking lot adjacent to the scene of the assault."

Indeed, the weight of the evidence reflects that, after 8 p.m., the defendant was no longer supporting financially any type of social gathering involving the plaintiff and the defendant's business interests were no longer being discussed by the plaintiff. During the course of the evening, the plaintiff became highly intoxicated and engaged in conduct that led to his reprimand by the defendant. Moreover, the evidence suggests that, during the latter part of the evening, the plaintiff, due to alcohol consumption, lacked the capacity to engage in any type of productive work related pursuits.[7] The plaintiff may have continued to socialize with some of his coworkers after 8 p.m., but that fact is not dispositive with respect to the issue of whether he was acting in the course of his employment. This is not a close issue; the evidence amply supports the commissioner's determination that for several hours, between 8 p.m. and midnight, the plaintiff was engaged in a substantial deviation from his employment activities. Cf. *McMorris* v. *New Haven*

*Police Dept.*, 156 Conn. App. 822, 833, 115 A.3d 491 ("[a]t the time he was injured, the plaintiff was where he would have been expected to be in the course of his employment as a police officer" and his deviation from his normal route to work "was so inconsequential relative to his job duties, which includes driving into work, that it did not remove him from the course and scope of his employment" [internal quotation marks omitted]), cert. denied, 317 Conn. 911, 115 A.3d 1106 (2015); *Kish* v. *Nursing & Home Care, Inc.*, 248 Conn. 379, 391, 727 A.2d 1253 (1999) ("plaintiff's decision to momentarily [stop] to mail a personal card was so inconsequential . . . so as to not remove her from acting in the course and scope of her employment" [internal quotation marks omitted]).

We now turn to the plaintiff's primary contention in this appeal, namely, that "the uncontradicted evidence clearly and unequivocally demonstrates" that, following his personal deviation from work related activities between 8 p.m. and midnight, he resumed his business activities and sustained injury while on his direct business route of travel. Specifically, the plaintiff argues that the police reports and crime scene photographs reflect that he was assaulted in an alley between the building that housed Fast Eddie's and the building that housed Borracho. The alley is connected to a rear parking area.

It suffices to observe that the evidence on which the plaintiff relies in support of this claim demonstrates the location at which the assault occurred. There is no dispute as to this fact. The police reports and crime scene photographs, however, are far from dispositive with respect to the issue of whether the plaintiff was at that precise location at the time of the assault because, as he argues presently, he was returning to his rental automobile in order to return to his hotel. It is plausible that the plaintiff was in the parking lot or the alley near Borracho for any number of reasons that were unrelated to his returning to his automobile or his returning to his hotel. For instance, he may have exited Borracho merely to make a telephone call or to engage in a private conversation with a third party outside of the restaurant. He may have been in the area because he was asked to leave Borracho and, perhaps, was headed to another bar. The plaintiff's mere presence at the scene of the attack in and of itself does not demonstrate, as the plaintiff suggests, that he had completed his deviation and had resumed his business travel. "The determinative question is whether the plaintiff, at the time of [his] injury, was engaged in the line of [his] duty in the business affairs of [his] employer." *Luddie* v. *Foremost Ins. Co.*, 5 Conn. App. 193, 196, 497 A.2d 435 (1985). We reiterate that "the claimant in a workers' compensation case bears the burden of proving that the employee's employment proximately caused the claimed injury." *DiNuzzo* v. *Dan Perkins*

*Chevrolet Geo, Inc.*, 294 Conn. 132, 147 n.11, 982 A.2d 157 (2009).

In our careful review of the record, we observe that the only other relevant evidence before the commissioner with respect to this narrow factual issue, i.e., whether the plaintiff had returned to his direct business route of travel, came in the form of the hearing testimony of the plaintiff, as well as deposition testimony of Johnson. At the hearing, the plaintiff testified that he had "very little memory" of the events of June 11, 2014 through "almost August" of 2014. He described his recollection of relevant events from the evening in question as being "spotty." Nonetheless, he testified that the alley in which he was assaulted was the fastest route between Borracho and his automobile that was in the parking lot behind the restaurants. He testified that he "was told" by one or more other persons that the assault occurred while he was walking back to his automobile. The plaintiff testified that he did not know or could not recall if he had planned on driving back to his hotel after leaving Borracho. He testified: "I was going towards the car. I don't know if, as we were walking, if we had discussions about whether or not we would drive home." Johnson testified that he and the plaintiff made a decision to leave Borracho together, that they utilized the alley that led to the parking lot behind Fast Eddie's, and that they were "headed to [their] vehicles" that were parked in the parking lot when the assault occurred.

Even if we were to view the testimony of the plaintiff and Johnson as dispositive evidence with respect to the issue of whether, at the time of the assault, the plaintiff was returning to his automobile for the purpose of returning to his hotel and, thus, as evidence that he was assaulted while on the direct business route of travel, the plaintiff is unable to rely on his testimony or Johnson's testimony in support of his claim.[8] In his findings, the commissioner expressly stated in relevant part: "I find the [plaintiff] was candid and that his testimony was credible [with respect to] the reason for the trip to Spokane and the occurrences during the early part of the evening at Fast Eddie's. I find the [plaintiff] not credible concerning what occurred in the latter portion of the evening at Fast Eddie's and at Borracho because his head trauma and inability to remember much of the evening renders the testimony unreliable." Moreover, the commissioner stated: "I find the testimony of . . . Johnson not to be credible." The plaintiff has not demonstrated that the factual findings that resulted from the commissioner's credibility determinations were unreasonable. We reiterate that "[i]t is within the discretion of the commissioner alone to determine the credibility of witnesses and the weighing of the evidence." *Ayna* v. *Graebel/CT Movers, Inc.*, 133 Conn. App. 65, 71, 33 A.3d 832, cert. denied, 304 Conn. 905, 38 A.3d 1201 (2012).

It appears that the commissioner did not make any express finding with respect to whether the plaintiff sustained a compensable injury while on the direct business route of travel because the plaintiff failed to present any persuasive evidence in support of that theory of recovery. In light of the foregoing, we conclude that the plaintiff has not demonstrated that either the commissioner or the board misapplied the law in evaluating the claim for workers' compensation benefits.

The decision of the Compensation Review Board is affirmed.

In this opinion the other judges concurred.

[1] The plaintiff's statement of the issues sets forth two distinct issues. The first issue, which we resolve in this opinion, is whether the commissioner erroneously failed to make a factual finding with respect to whether the plaintiff was on the direct route of his business travel at the time he sustained the injury at issue and, in light of that error on the part of the commissioner, whether the board erroneously affirmed the commissioner's dismissal of his claim for benefits. The second issue is whether the board erroneously "failed to find" that he was on the direct route of his business travel at the time he sustained the injury at issue. Setting aside the fact that the plaintiff's second claim is legally untenable on its face, as the board is not a trier of fact, we observe that the plaintiff has failed to set forth an independent analysis of the second claim in his brief. Accordingly, we deem the second claim to be abandoned. See, e.g., *Tonghini* v. *Tonghini*, 152 Conn. App. 231, 239, 98 A.3d 93 (2014) (assignments of error not briefed beyond statement of claim will be deemed abandoned and not reviewed by this court).

[2] Sedgwick Claims Management Services, Inc., which is identified in the record as the defendant's workers' compensation insurer, also is named as a defendant in this action. For ease of reference, references to the defendant are to Pitney Bowes, Inc.

[3] Following the events of June 11, 2014, the defendant reprimanded the plaintiff for both sexual harassment and excessive alcohol consumption.

[4] Johnson sustained physical injuries as well.

[5] As the plaintiff correctly observes, the commissioner did not find that the injuries for which he sought workers' compensation benefits "were caused by his misconduct, intoxication, or by his participation in a social or recreational event; nor was there testimony or other evidence in the record to support such a finding." Neither the commissioner nor the board relied on these theories in determining that the claim should be dismissed.

[6] Consistent with his appellate argument, the plaintiff, in his proposed findings submitted to the commissioner, asked the commissioner to find that, at the time of the assault, he and Johnson were "in the parking lot behind Fast Eddie's and planning on heading to their hotels and homes, respectively." The plaintiff also asked the commissioner to find that "[t]he [plaintiff] was heading back to his rental car which was furnished to him by [the defendant] when he was attacked by unknown assailants" and "in a place he was reasonably expected to be."

In the plaintiff's motion to correct the commissioner's finding and dismissal, he asked the commissioner to find that at the time of the assault, "[t]he plaintiff was in a place that he was reasonably expected to be, to wit, in the parking lot where he parked to go to Fast Eddie's for business entertainment that was not only condoned but also encouraged by his employer. He was heading toward his vehicle with . . . Johnson with the intent of returning back to the hotel (which was all paid for by [the defendant])." The court denied this ground set forth in the motion to correct.

[7] The plaintiff, correctly referring to the principle that Connecticut has established a no-fault workers' compensation system that imposes a form of strict liability on employers; see, e.g., *Sapko* v. *State*, 305 Conn. 360, 377, 44 A.3d 827 (2012); urges this court not to focus solely on the issue of whether a work related injury occurred and not to consider whether his conduct at the time of the injury was socially proper or moral. Thus, the plaintiff argues that "in the present case [his] intoxication and reportedly offensive behavior are irrelevant: there is no evidence in the record nor finding of fact below to suggest that the injuries [he] sustained in this assault were due to his intoxication or wilful misconduct . . . ."

In affirming the decision of the commissioner, the board aptly observed on the basis of the evidence presented that the plaintiff had made comments that were "inappropriate and offensive" during the events at issue. The board then stated: "We presume that this testimony was offered so as to support an inference as to the [plaintiff's] intoxication level and that the nature of discussions was not in furtherance of the [defendant's] business. If the purpose of the testimony was to cast the character of the [plaintiff] in a bad light, we remind all that workers' compensation is a no-fault remedy. The character of a claimant neither assures nor bars entitlement to the remedy." This court fully agrees with the board's succinct explanation in this regard and, likewise, has evaluated the plaintiff's conduct solely for the purpose of evaluating whether he is entitled to benefits according to law.

[8] We observe that, although the plaintiff argues that the evidence demonstrated that he was attacked while on the direct business route of travel *between Fast Eddie's and his automobile*, the evidence on which the plaintiff relies, which includes, but is not limited to, his own testimony, demonstrates that he was attacked after exiting Borracho, not Fast Eddie's. As the plaintiff recognizes, Borracho and Fast Eddie's are distinct businesses, and although Borracho is located near Fast Eddie's, they are located in separate buildings that are separated by an alley.